MASONITE CORPORATION *v.* SCRUGGS.

(In Banc. Feb. 24, 1947.)

[29 So. (2d) 262. No. 36348.]

Welch & Cooper, of Laurel, for appellant.

Leonard B. Melvin and Jeff Collins, both of Laurel, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Scruggs brought an action at law against Masonite Corporation to recover money damage for personal injuries allegedly suffered by Scruggs as a result of the failure of Masonite to fulfill its duty to Scruggs as an employee as hereinafter set out in the declaration. He recovered a judgment for three thousand dollars and Masonite appeals.

The main contention of appellant on this appeal is that the proof shows no liability against it and that its request for a peremptory instruction should have been granted by the trial court. We will deal only with that question.

The declaration alleged that appellant was engaged in the manufacture of Masonite boards and in such manufacture used chemicals, the nature and extent of which plaintiff did not know; ". . . and the defendant did not inform him, and did not notify him that they were using any chemicals in the manufacture of the boards, and put him to handling said Masonite board while it was wet and dripping with water, which was negligence and carelessness, and by the exercise of reasonable care the defendant would have known that the plaintiff's hands would be poisoned and damaged, and he would be seriously injured . . .," and that as a result of handling the wet boards his hands and body became "infected or poisoned with said chemical and broke out with sores over his hands and arms and his face and body . . ." Defendant plead the general issue.

The proof of the plaintiff shows that the finished boards are from one-eighth to one-fourth inch in thickness and twelve to sixteen feet long. That in the process of manufacture they reach a machine called the spray rack. The boards are placed upon this rack. Under this rack is a vat supposedly containing water. The boards are washed, or sprayed, on the under-side by means of a wire brush revolving in this water, throwing the water against the boards. After working a short time in other departments

Scruggs was put to work at this spray rack. It was the duty of appellee, and his co-workers, to place the wet sides of these boards together after they had been sprayed and send them on their way to the warehouse. In thus placing the boards together the hands of the employees became, and remained, wet. After working at this rack three or four weeks appellee's hands became infected, or diseased, caused, as he claims, by handling these boards, and his neck and face also became infected by his hands coming in contact with them, as a result of which he suffered much pain and considerable expense. The water in this vat, after its use as a spray, drains from the vat through a closed pipe, emptying outside the building. Sometime subsequent to the injury appellee, through a nephew, obtained at the end of this drain-pipe a sample of this discharged water, and sent it for examination to the State Chemist at Mississippi State College. The analysis disclosed that this discharged water contained two-tenths of one percent phenol or carbolic acid. In other words, there was one part phenol to four hundred and ninety-nine parts water.

Scruggs informed Masonite of his trouble. He went to a number of doctors, including the regular doctor for Masonite. He used only one of these, Doctor J. W. Stringer, as a witness. As to the nature of the trouble, Dr. Stringer testified that the eruption had the appearance of smallpox, except the pustules were a little smaller; that the hands were covered with blisters. But he frankly stated he did not know what it was. "It was something new to me." As to the cause of it he said, "Looked like it might have been a chemical, just to look at it." However, he did not undertake to state what did cause it. He also said that the foregoing percentage of phenol and water was a very diluted solution; that phenol was a fine antiseptic—a germicide—in proper solution and that he used it for that purpose in his office; that it was used to counteract infection; that it might be used to a strength of four percent without harm; that if it caused harm the

injury would be a burn and not an infection. In fact, he said that two-tenths of one percent phenol might be used in the eye without injury, but he thought the lining of the stomach more delicate than the eye. He also said there were many different kinds of skin diseases and that the causes were as varied as the diseases.

Appellee also showed that four other employees at this plant, after working various lengths of time, had developed skin troubles, more or less serious, but none of these worked at the spray rack.

That, in substance, was appellee's case.

On behalf of Masonite it was shown that the water used in this vat for spraying the boards was pumped from a well two hundred feet deep into a covered tank with a capacity of 100,000 gallons, from which it flows to the vat through a closed pipe; that nothing is added to the water from its source to the vat; that at or near the vat is a cut-off which divides the water, part going to the vat and part to a drinking fountain near-by; that the water at this fountain is used generally for drinking purposes by the employees working in that part of the plant, and that no ill effect has ever come from such use.

It was further shown that out of the hundreds of persons who had worked at the spray rack appellee was the only person who had developed any trouble.

Dr. H. H. Harned, Professor of Bacteriology at Mississippi State College, testified that students in chemistry under him, both young men and young women, regularly bathed their hands in water containing two percent phenol, as a suitable disinfectant.

Dr. J. G. Thompson of Jackson, Mississippi, an expert on skin diseases, who treated Scruggs, and the only skin expert who did treat him, testified that Scruggs had an eruption on his hands and a slight eruption on his face— blisters and pustules, that is, blisters with pus in them; that he had what is called dermatitis repens; that there are two types of repens: the first type is caused by the patient's general condition and it continues to recur. It

is characterized by rings and blisters containing pus, and results in a shrinking of the skin. In the second type there are blisters with pus in them but the blisters are smaller than in the first type, and with proper treatment the trouble may be entirely cured; that the common type is a boil or rising; this type results from a germ, or an organizm, known as staphylococcus; that this germ is practically everywhere; in kitchens, on floors of homes, about farms, around machinery, in factories and other places. This type results from infection. Scruggs had the second type. He further said phenol, if used in solution sufficiently strong, would cause a burn—not an infection; that it is a disinfectant; that he found no evidence of a burn on Scruggs. He said, ". . . I didn't think of carbolic acid when I examined him;" that doctors bathe their hands in phenol as a disinfectant and some use a solution as strong as two percent; that in his opinion the use by the ordinary person of a solution of phenol of the strength of two-tenths of one percent would not affect the skin in any way, either as a disinfectant or to produce burns.

Now, in view of the cause to which Scruggs attributes his injuries, the burden was upon him to show, first, the existence of the chemical in such quantity as to cause injury to one doing his work in a proper manner; second, that Masonite knew of the existence of such chemical or would have known of it by the exercise of reasonable diligence; third, that so knowing, or having reason to know, it did not warn him of the danger and made no provision to protect him from the harmful result; and fourth, that his injuries were proximately caused by the existence of such chemical.

As to the first and fourth requisites it cannot be said, in our opinion, with any degree of certainty, that his injury was caused by the percentage of phenol in this water, conceding, for the purpose of the conclusion, the existence of phenol. According to the proof the injury would not have resulted even though he had bathed his

hands in the solution. Again, the nature of his trouble was not such as would have been produced by the use of phenol. The undisputed evidence is that phenol causes a burn and the proof is Scruggs had an infection. In addition to that, it is shown, without contradiction, that this condition might have been produced by various causes. At most, considering all of these matters together, it is the merest possibility that this phenol caused the injury. In such case no recovery can be had. Railroad v. Cathey, 70 Miss. 332, 12 So. 253; Kramer Service, Inc., v. Wilkins, 184 Miss. 483, 186 So. 625; Equitable Life Assur. Soc. v. Mitchell, 201 Miss. 696, 29 So. (2d) 88.

As to the second requisite, there is no proof Masonite knew of the existence of this phenol, or that it had information charging it with such knowledge. The water, uncontaminated, was pumped from a deep well into a covered tank and thence through a closed pipe to the vat. The employees drank, without ill effect, the same type of water that went into the vat. Hundreds of employees had worked at this rack and none had been injured. The employer had no notice that work at this rack might result in such injury. The peremptory instruction should have been given. See Hope v. Natchez, C. & M. R. Co., 98 Miss. 822, 54 So. 369; Gulf, M. & N. R. Co. v. Brown, 143 Miss. 890, 108 So. 503; Eagle Cotton Oil Co. v. Sollie, 185 Miss. 475, 187 So. 506; Pinkley v. Chicago & Eastern I. R. Co., 246 Ill. 370, 92 N. E. 896, 35 L. R. A. (N. S.) 679.

Reversed and judgment here for appellant.