## MRS. VIRGINIA G. REASON v. SINGER SEWING MACHINE COMPANY.

### (Filed 17 April 1963.)

1. Negligence §§ 7, 24a—

Negligence must be the proximate cause of injury in order to be actionable, and therefore nonsuit must be allowed when there is no evidence of a

causal relation between the alleged negligence and the injury complained of.

**2. Negligence § 24a—   Evidence held insufficient to show causal relation between asserted negligence and injury.**

Evidence tending to show that the machine manufactured and installed by defendant had a defect which caused it to spray oil into the face and eyes of plaintiff when she operated the machine, that shortly after operating the machine plaintiff's eyes began to burn, with expert testimony that plaintiff suffered first degree burns to her eyelids and second degree burns of the conjunctiva, and that the spraying of hot oil or of warm oil of certain chemical compositions into plaintiff's eyes could have caused this condition, *held* insufficient to overrule nonsuit in the absence of evidence of the chemical composition of the oil sprayed into plaintiff's eyes by the machine or that such oil was hot.

APPEAL by plaintiff from *Carr, J.,* December 3, 1962 Civil Term of WILSON.

This is a civil action to recover for alleged injuries sustained in the manner hereinafter set out.

Samsons Manufacturing Company purchased thirty Singer sewing machines from the defendant. These machines were delivered and installed by the defendant's representatives at the plant of Samsons Manufacturing Company in Wilson, North Carolina, in what purported to be proper working condition. One of these machines, bearing serial number AM827903, was turned over to Samsons Manufacturing Company and put into operation on 7 October 1958 at approximately 2:30 p.m. The first operator to use this particular machine was the plaintiff, an employee of Samsons Manufacturing Company, who was employed as a sewing machine operator.

The plaintiff's evidence tends to show that when she began to operate the machine, oil immediately began to blow or spray from an opening in the machine, known as the thread take-up slot, into the face and eyes of plaintiff, who was sitting in her usual sewing position with her head approximately three to four inches from such opening. That plaintiff first noticed the oil spraying from the machine as it accumulated on her glasses and plaintiff thereupon reported the condition to her supervisor who in turn reported it to the plant foreman.

The plant machinist examined the machine and after finding excessive amounts of oil, made a few adjustments thereby decreasing the flow of oil in the machine.

Thereafter, plaintiff again attempted to use the machine and found that oil continued to spray from the machine into her face. After operating this machine approximately two hours, plaintiff's eyes began to burn and water and her eyes continued to burn and bother

her the remainder of the day and during the following morning when she returned to work. On the following morning, plaintiff again began to operate the same newly installed Singer sewing machine but found that the machine continued to spray oil into her face and eyes. Plaintiff again reported this condition to her supervisor and to the plant foreman.

When the condition of plaintiff's eyes gradually got worse on 8 October 1958, she reported this condition to her employer and obtained medical attention from Dr. Harry C. Willis. Dr. Willis, a specialist in the field of Ophthalmology, examined the plaintiff and found first-degree burns of the upper and lower eyelids and second-degree burns of the conjunctiva.

Dr. Willis testified that in his opinion first-degree burns of plaintiff's eyelids and second-degree burns of the conjunctiva could have been caused either by hot oil spraying from the sewing machine into the plaintiff's eyes, or by warm oil so spraying, depending upon its chemical composition.

Dr. Willis further testified: "I treated her from the 8th October, 1958, throughout that year and on into 1959. This treatment was for the remnants of the burn. The burn had been taken care of, but there was an inflammation there with a lingering conjunctivitis that circled the eye. Now what caused that I don't know. I don't think anybody outside of the Lord knows, because she's been through many hands and nobody has ever done anything for it. She said she had not had any difficulty of this sort prior to the time the oil got into her eyes. * * *

"I think that when Mrs. Reason came in to see me she told me that she had been burned with hot machine oil. She had been working and something gave way at the machine or something squirted oil in her eyes.

"My diagnosis was not based primarily on the fact that it was my understanding she had been burned with hot oil. My diagnosis was on seeing that they were burned regardless of what caused it. * * *"

The plaintiff testified that "(t)he temperature of the oil when it got on my face could be described as warm. * * * (T)he temperature was about the temperature of warm water in which you washed your face. * * * (T)he force or velocity of the oil was about like rain-spray like fine rain. The force was something like that of an atomizer that you spray your throat with. The oil was on my face and my glasses * * *. I first became aware of the presence of oil on my face because my glasses got foggy and I couldn't see. * * * I did not have occasion to actually remove oil from my eyes. I didn't wipe my eyes. * * * The oil got all around my forehead, up over my eyes, around. Got some

on my lips once or twice. * * * I tasted the oil some, and got some on my tongue. My tongue was not burned. I didn't keep it (the oil) in my mouth long enough for it to burn. My lips didn't get burned. My face didn't get burned. * * * The part of the face away from the eyes, away from the immediate area of the eyes, was unaffected by exposure to the oil."

The plaintiff's testimony further tends to show that the particular machine involved was defective in that the defendant in manufacturing and assembling said machine allowed a burr or sharp place to remain on the needle bar crank which partially cut the oil wick located therein, which defective wick allowed excessive oil to accumulate in the head of said machine and the oil was thrown out of the machine through the thread takeup slot when operated.

At the close of plaintiff's evidence the defendant made a motion for judgment as of nonsuit. The motion was allowed.

Plaintiff appeals, assigning error.

*Teague, Johnson & Patterson; Ronald C. Dilthey; Carroll W. Weathers, Jr., for plaintiff appellant.*

*Lucas, Rand, Rose & Morris; Dockery, Ruff, Perry, Bond & Cobb for defendant appellee.*

DENNY, C.J.   If it be conceded that the machine furnished by the defendant was defective and that the defendant knew or by the exercise of reasonable care such defect could or should have been ascertained, the question still remains whether or not such alleged negligence was the proximate cause of plaintiff's injuries.

Negligence, in order to be actionable, must be shown to have been the proximate cause or one of the proximate causes of the plaintiff's injuries. There must be some causal relationship between the breach of duty and the injury. *Johnson v. Meyer's Co.,* 246 N.C. 310, 98 S.E. 2d 315.

In *Wall v. Trogdon,* 249 N.C. 747, 107 S.E. 2d 757, the plaintiffs alleged that the defendant, Trogdon Flying Service, Inc., while engaged in dusting and spraying crops by the use of an airplane, flew said airplane over the plaintiffs' lakes, which were stocked with fish, while dispensing a "poisonous rothane insecticide spray," as a result of which the fish belonging to the plaintiffs were killed and the waters rendered unsafe for use in any way or any purpose by either man or animal. On appeal to this Court from a judgment as of nonsuit, we said: " * * * (T)here must be legal evidence of every material fact necessary to support a verdict, and the verdict 'must be grounded on

a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities.' (Citations omitted)

"If the evidence fails to establish either one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed.

"In the light of these principles applied to the evidence in the case there is no causal connection between the death of the fish in the lakes and the operation of the aircraft.

"In the first place there is no evidence as to elements constituting the spray used in spraying the crops. If there were poison in the spray there is no evidence that it was poisonous to fish. If it were poisonous to fish there is no evidence that the fish died from the poison. Whatever the oily substance seen on the waters of one of the lakes was, there is no evidence as to what it was, or the source from which it came. The testimony of the expert fishery biologist is purely speculative, and founded on possibilities. Indeed the element of proximate cause is missing."

In the case of *Hanrahan v. Walgreen Co.*, 243 N.C. 268, 90 S.E. 2d 392, the plaintiff alleged she had purchased from the defendant a hair rinse and had used it as directed; that each time she used it her scalp became irritated; that prior to its use she had never had any trouble with her scalp. After using the hair rinse the third time she consulted a physician who found that she had weeping dermatitis of her scalp.

In sustaining a nonsuit, *Parker, J.*, speaking for the Court, said: "It may be there was a poisonous substance in the hair rinse, but there is no evidence to support such a conjecture." See also *Mauney v. Luzier's, Inc.*, 215 N.C. 673, 2 S.E. 2d 888.

In the case of *Watson v. Borg-Warner Corporation*, 190 Tenn. 209, 228 S.W. 2d 1011, a machine operator frequently came in contact with lubricating oil in the operation of her machine. Upon a change of brands of oil by her employer, the plaintiff, operator, developed a rash on her hands and arms which required extensive medical care. The operator sued her employer for negligently failing to protect her from the effects of the oil. In upholding a directed verdict for the defendant, the Court said: "There is no competent testimony or prima facie proof, either of the nature and medical definition of the disease or of its probable cause. In fact, the plaintiff proved nothing except that she noticed the eruption on her skin after the change of oil. The isolated fact that one event occurs after another is not by itself sufficient to warrant an inference that the event which is first in time is the cause of the latter. * * *

"As we view it, the technical medical name of plaintiff's disease was not an essential of plaintiff's proof, but proof that plaintiff's disease was of such character that it could or would probably, in the light of medical clinical experience, be caused by contact with an oil having the chemical components of the oil actually used, was an essential and a missing element of plaintiff's proof."

Likewise, in the case of *Masonite Corp. v. Scruggs,* 201 Miss. 722, 29 So. 2d 262, the plaintiff Scruggs alleged and contended that he was injured by the constant use of water containing acid in his work. It was held that in the absence of a showing that the water contained acid in sufficient quantities to cause such alleged injuries, the acid could not be found to be the proximate cause of the plaintiff's injury.

In the case before us, there was medical testimony that hot oil could have caused the disease or that unheated oil might, depending upon the chemical composition of it. However, there was no evidence that the oil was hot. The plaintiff testified it was warm. Dr. Willis, in his testimony as to what might have caused the burns, said: "I can tell you hot oil or hot water or hot anything could do it — produce the same condition she had. Even baby oil, if it's hot, could do it."

There was no evidence in the trial below tending to show the chemical composition of the oil involved.

In our opinion, the evidence is insufficient to establish actionable negligence on the part of the defendant.

Affirmed.