VOYD L. HUBBARD, TRADING AND DOING BUSINESS AS HUBBARD'S SUPERETTE, v. QUALITY OIL COMPANY OF STATESVILLE, INCORPORATED; QUALITY OIL TRANSPORT COMPANY, A PARTNERSHIP; AND WILLIAM J. HAMILTON.

(Filed 23 November, 1966.)

**1. Negligence §§ 4, 5—**

The doctrine of *res ipsa loquitur* does not apply to an explosion occurring about the attic of the building on plaintiff's premises while the individual defendant was delivering gasoline to underground storage tanks in front of the premises, since the underground tanks and building are under plaintiff's and not defendant's control. Further, under the evidence in this case, more than one inference could be drawn as to the cause of the explosion.

**2. Negligence § 21—**

When the doctrine of *res ipsa loquitur* does not apply, plaintiff has the burden of showing the failure of defendant to exercise the degree of care which would have been exercised by an ordinarily prudent man under the circumstances and that such failure was a proximate cause of the injury complained of.

**3. Negligence § 24a—**

Negligence is not presumed from the mere fact of injury, and in order to overrule nonsuit plaintiff must introduce evidence of every material fact necessary to support with reasonable certainty the probability of negligence on the part of defendant and that such negligence was a proximate cause of the injury, and evidence which raises a mere guess or possibility is insufficient to overrule nonsuit.

**4. Evidence § 51—**

The explosion in suit occurred while defendant employee was delivering gasoline to underground storage tanks on plaintiff's premises. There was no evidence that before the explosion in the attic of plaintiff's building gasoline had been spilled on the ground in the area of the filler pipes in front of the building. *Held:* Testimony of an expert based upon the hypothesis that the gasoline vapors came from the evaporation of spilled gasoline on the ground is incompetent as being based upon a fact not supported by evidence.

**5. Appeal and Error § 51—**

Incompetent evidence admitted at the trial must be considered for whatever it is worth in passing upon the lower court's refusal of defendants' motions for nonsuit.

**6. Negligence § 24a—   Evidence on question of defendant's negligence as the proximate cause of explosion held insufficient for jury.**

Plaintiff's evidence tended to show that the individual defendant delivered gasoline to the underground storage tanks on plaintiff's premises before daylight on a still, cold, foggy morning, that the individual defendant left the vehicle unattended while the gasoline was flowing into the underground tanks, and that an explosion occurred in the area of the attic of plaintiff's building, causing the damage in suit. The evidence dis-

closed that there were vent pipes from the underground tanks running into the building and through the attic where an oil heater and electric motors were located, and also that there were louvers opening from the outside into the attic. There was no evidence that gasoline was spilled around the filler pipes in front of the building prior to the explosion. *Held:* Whether the gasoline fumes causing the explosion arose from gasoline spilled around the inlet of the storage tanks or whether they came from the vents from the storage tanks is left in mere conjecture, and nonsuit should have been entered. Further, the evidence failed to show any causal connection between the explosion and the fact that the individual defendant left the vehicle unattended while the gasoline was flowing into the underground storage tanks.

**7. Negligence § 7—**

An act of negligence relied on must be shown to have had a causal relationship to the injury in order to avail plaintiff.

APPEAL by defendants from *Clarkson, J.,* Special 13 June 1966 Session of ALEXANDER.

Civil action for damages for the destruction of plaintiff's property resulting from an explosion alleged to have been caused by defendants' actionable negligence.

The evidence offered at the trial tends to show: Quality Oil Company of Statesville, Inc., is a North Carolina corporation in the business of selling gasoline products to retail dealers. Quality Oil Transport Company is a partnership, acting as agent for the corporate defendant in the business of making deliveries of gasoline. The individual defendant, Hamilton, was at the time in question an employee of the partnership defendant, delivering gasoline to plaintiff's premises. Plaintiff is sole owner of Hubbard's Superette, operating as a general grocery store and gas station.

At approximately 6:00 o'clock A.M. on 3 January 1965, defendant's tanker gasoline truck, driven by defendant Hamilton, arrived at plaintiff's place of business to make a delivery of gasoline. It was parked between the gasoline pumps and the building, parallel with the street and the front of the building. The tank portion of the vehicle was divided into five separate containers, each with varying capacities of 900 to 2000 gallons of gasoline. One Wike, an employee of plaintiff, came out of the store, climbed up on top of the tanker, opened the lid to each of the five separate containers, and inspected the containers to determine the amount of gasoline in the containers. After making his inspection, he left the tanker and returned to the store. In the meantime, defendant Hamilton had been connecting the hoses and performing the other tasks necessary to unload gasoline into the underground tanks located under plaintiff's store. In order to do this, he attached two hoses to the truck and connected the ends to "L" shaped pipes which were fitted to "filler"

pipes, these being pipes running from the underground tanks to the surface. Hamilton then went inside the store. He had been inside approximately fifteen minutes when an explosion occurred that knocked one wall, the windows and doors outward. Hamilton ran outside, shut off the valves at the truck so as to cut off the flow of gas, and released the hoses from the truck. He then moved the truck to a safe distance. He returned, capped the filler pipes, and removed the hoses. By this time the fire which had begun inside the store almost immediately after the explosion, had spread considerably.

The filler pipes, which were located some six to eight inches in front of the wall, ran to three tanks which were buried beneath the store building. Three vent pipes ran from the tanks to the ground level and then up the back wall of the building, stopping at a point where the back wall met the roof; these pipes released the air and fumes from the tank as the volume of gasoline displaced the air in the tank. A vent constructed in the dormer facing towards the front of the building provided ventilation in the attic. The walls of the building were 9 feet high, and the attic, where the roof peaked, was another 5 or 6 feet in height. Another attic vent was built in the north wall. The filler pipes were next to the east wall, the closest pipe being 12 feet from the corner where the east wall met the north wall. Within the attic was a hot-air oil-burning furnace, in which the oil was ignited by electric sparks. There was a room immediately behind and adjacent to the store which housed refrigeration equipment. This equipment was run by five electric motors situated within the room. The vent pipes were immediately adjacent to this room and were located in the corner where the north wall of the room joined the west wall of the store. A new room was being constructed on the back of the store.

At the time the gasoline was being delivered, the temperature was about 30 degrees. It was foggy, damp, and the air was still.

The jury answered issues of negligence, contributory negligence and damages in favor of plaintiff. Judgment was entered on the verdict. Defendants appeal.

*McElwee & Hall for plaintiff.*
*Deal, Hutchins and Minor, and Richard Tyndall for defendants.*

BRANCH, J. The decisive question on this appeal is whether the court erred in overruling defendants' motion for nonsuit.

The doctrine of *res ipsa loquitur* is not invoked by plaintiff, nor is it available. The attic furnace, the underground tanks, filler pipes, and the entire store building were under the control of the plaintiff. The doctrine does not apply when the instrumentalities causing

the injury are not under the exclusive control or management of the defendant. Nor does the doctrine apply "where more than one inference can be drawn from the evidence as to the cause of the injury, (or) . . . where the existence of negligent default is not the more reasonable probability. . . ." *Springs v. Doll,* 197 N.C. 240, 148 S.E. 251. Therefore, the plaintiff must present evidence of actionable negligence on the part of the defendant in order to carry his case to the jury. To establish actionable negligence plaintiff "must show: (1) That there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which defendant owed to the plaintiffs under the circumstances in which they were placed; and (2) that such negligent breach of duty was the proximate cause of the injury, a cause that produced the results in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts that existed. . . . Negligence is not presumed from the mere fact of injury. . . . There must be legal evidence of every material fact necessary to support a verdict, and the verdict 'must be grounded on a reasonable certainty as to the probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibility' . . . If the evidence fails to establish either one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed." *Lane v. Dorney,* 250 N.C. 15, 108 S.E. 2d 55; *Lane v. Dorney,* 252 N.C. 90, 113 S.E. 2d 33; *Reason v. Machine Co.,* 259 N.C. 264, 130 S.E. 2d 397.

Plaintiff, in support of his allegations, attempts to show by direct and circumstantial evidence that defendants were negligent in that their agent, Hamilton, (a) attempted to deliver gasoline during the dark and prior to daylight hours, (b) attempted to deliver gasoline into underground tanks when the weather was dense, foggy, and heavy, and the air was still, (c) left the vehicle unattended while delivering a hazardous and dangerous substance, (d) allowed or permitted gasoline to overflow or leak from the filler pipes or hoses onto the driveway in large quantities, creating an extremely dangerous and hazardous condition.

Plaintiff offered direct evidence which tended to sustain his allegation that defendants left the truck and tanker unattended after starting delivery of gasoline; that the weather was dense, foggy and heavy, and the air still, and that the delivery was made prior to daylight hours. Plaintiff seeks to show by circumstantial evidence that defendants' agent negligently allowed gasoline to spill or leak in front of the store building, and that the leakage or spillage was the proximate cause of the explosion. His theory is that as

the spilled gasoline evaporated during a period of ten or fifteen minutes, vapors from it traveled through a vent into the attic, where they were drawn into the fresh-air inlet of the furnace and to the open flame, thereby causing the explosion.

The only evidence of spilled gasoline near the filler pipes and in front of the store was the testimony of plaintiff's witness Shew, who testified, over defendants' objections, substantially as follows: That he was some three-quarters of a mile from the plaintiff's store when he saw a flash in the sky above the store. He immediately proceeded to the store, and arrived there about one minute later. "I saw some guy — I don't know who he was — at the tanker. He was at the back unhooking a hose. One was already unhooked from the tanker. The other hose was already loose. It was laying beside the tank, . . . He got in his tanker and left. . . . he came back up there . . . in a short time and took the hoses out of the tank . . . we pulled one down next to the gas tank and we carried the other one across the road to the mail box." Question by plaintiff's attorney: "Now when you went to help him pull the pipe away — or pull the hose away, what was he doing at that time at the filler pipe? A. He pulled the hose out and was putting a cap on it." Question by plaintiff's attorney: ". . . at the time you were there at the filler pipes, did you make an examination around the filler pipe and leading from the filler pipe down the highway? A. No, I didn't exactly make an examination. I just noticed there was some gas had run down through there. . . . There was no fire out in front of the store anywhere along that whole area at that time."

Plaintiff also offered the testimony of Charles Harmon, who was, over defendants' objection, qualified as an expert in the field of thermo dynamics, gas dynamics, and gas combustion. Over defendants' objection, plaintiff's counsel asked him a hypothetical question as to what might or could have caused the explosion and fire. This question contained, *inter alia,* the following two hypotheses: "10. That during the period that the tanker was unloading its gasoline into the storage tank the strong odor of gasoline was smelled. 11. That prior to the time that the tanker began the unloading of gasoline there was no gasoline on the ground in the area of the filler pipes or in front of the building." In answer, Mr. Harmon said: "It is my opinion that the explosion and resulting fire could or might have resulted from gasoline vapors in the correct proportion to cause an explosive mixture. That such a mixture came in contact with the open flame of the hot air furnace, and that this vapor entered the attic space where the furnace was through the louvered ventilator, *and that the vapor came from the evaporation*

*of spilled gasoline in front of the store."* (Italics ours) Defendants' motion to strike this answer was overruled.

"Expert opinion derives its probative force from the facts upon which it is predicated, and these must be legally sufficient to sustain the opinion of the expert. . . . The facts on which an opinion is based must measure up to legal requirements. Expert testimony on a state of facts not supported by the evidence is inadmissible.

"Expert testimony on speculation or conjecture is not evidence, especially when it conflicts with physical facts. . . . *The expert's opinion cannot be elicited to supply the substantive facts necessary to support the conclusion."* (Italics ours) Rogers on Expert Testimony, Third Edition, § 54, pp. 109, 111.

"The objection to the admission of opinion evidence of expert witnesses on the ground that in the particular instance it invades the province of the jury has been expressed by this Court in several decisions. . . . 'Whatever liberality may be allowed in calling for the opinions of experts or other witnesses, they must not usurp the province of the court and jury by drawing conclusions of law or fact upon which the decision of the case depends.'

"However, it would seem that the proper test is whether additional light can be thrown on the question under investigation by a person of superior learning, knowledge or skill in the particular subject, one whose opinion as to the inferences to be drawn from the facts observed or assumed is deemed of assistance to the jury under the circumstances. . . . Undoubtedly it would be competent for an expert witness to give his opinion as to what causes would produce the result observed, but this would not permit him to inject into the consideration of the jurors the weight of his assertion that such result was in fact produced by a particular cause." *Patrick v. Treadwell,* 222 N.C. 1, 21 S.E. 2d 818.

It was competent for the expert witness to express an opinion that gasoline vapors coming in contact with the open flame in the attic furnace could have produced the explosion, but it was beyond his province as a witness to state to the jury as a fact that the explosion was caused by vapors that came from the evaporation of spilled gasoline in front of the store. Expert opinion testimony is no stronger than the facts upon which it is based, and evidence based on guess, conjecture or speculation should be disregarded. The objection to the hypothetical question should have been sustained and the answers stricken, because of the insufficiency of evidence showing that gasoline spilled BEFORE the explosion. On the contrary, the evidence suggests that it was spilled AFTER the explosion when Hamilton disconnected the hose. Although incompetent, this evidence must be considered for whatever it is worth in passing upon

the motion for nonsuit. Assuming that the gas was spilled in front of the store, the crucial question remains as to WHEN it was spilled.

Plaintiff's expert witness further testified: "Evaporation is affected by the temperature so that if the gasoline is cold, it will evaporate more slowly than if it is hot. If the outside temperature is cold, rather than warm, it will evaporate more slowly cold than warm. . . . I would say that some of the important factors in determining the question as to whether the presence of gasoline vapors in an area would be the size of the area covered; the time it had been there in existence; the temperature of the ground and the air, and of the gasoline itself; and finally, whether or not there was any wind, motion or anything to carry it away; . . . If an area is covered with gasoline and the air is completely still, the evaporation is going to be slower than if there is a wind blowing across it; gasoline vapors are three to four times heavier than air. . . . Assuming that the jury finds from the evidence that the regular gas tank, or one of the regular gas tanks, or tanks holding regular gas, underneath the store was a 4,000 gallon tank and was empty, then for each gallon of gasoline put into that tank there would necessarily be a gallon of air or gasoline or vapors expelled from the tank. . . . Taking my theory about the fumes going into the combustion chamber and there being ignited by the flame, then the explosion would propagate out to wherever these fumes were present. This propagation would be on the order of thousandths of a second, perhaps. When you have ignition anywhere in a volume of fumes, it is going to propagate to the end of those fumes immediately, using the term immediately in the ordinary sense. . . . The ignition of a flammable mixture of gasoline vapors will propagate to the point where the flammable mixture is no longer a flammable mixture. And if the flammable mixture extended from the point of ignition to the source of the gasoline fumes, then it would propagate right down to the source of the gasoline."

All of plaintiff's evidence shows that there was no fire in front of the store for an appreciable length of time after the explosion. Yet, plaintiff contends that the source of the fumes or vapors which caused the explosion came from in front of the store building.

It is more plausible to infer from plaintiff's evidence that as gasoline was received in the underground tanks vapors were expelled from the tanks through the vent pipes into the attic, where they were ignited by the furnace, or into the refrigeration equipment room where they were ignited by the electric motors.

The only evidence which plaintiff offered to sustain his allegations of defendants' negligence was that tending to show that Hamilton left the tanker unattended after starting the flow of gasoline.

Plaintiff failed to show, however, that defendant Hamilton's absence or his failure to have the truck attended *caused* gasoline to spill or leak in front of the store. Without some evidence that Hamilton had caused or permitted gasoline to spill *before* the explosion, plaintiff cannot establish such negligence as a proximate cause of the explosion, and his allegation fails.

"There must be some causal relationship between the breach of duty and the injury." *Reason v. Sewing Machine Co.*, 259 N.C. 264, 130 S.E. 2d 397.

The plaintiff relies heavily on the case of *Moore v. Beard-Laney, Inc.*, 263 N.C. 601, 139 S.E. 2d 879, in which the agent of the defendant was delivering gasoline to the plaintiff's service station, and the agent had been warned that one of the tanks might overflow, that it was necessary to watch the air vent on the tank in order to see when the tank was full. Notwithstanding, after the agent started pumping gasoline for delivery, he went into the store and while he was in the store the tank overflowed; the gasoline was ignited by a spark from an electric switch, causing damage. The Court held these facts sufficient to be submitted to the jury on the issue of negligence. The *Moore* case, however, is distinguishable from the instant case, in that there the plaintiff not only offered direct evidence that the tank had overflowed before the explosion, but that defendant had been warned of the danger. There was also direct evidence that the gasoline which had overflowed was ignited by a spark from an electric switch. Comparable evidence is lacking here. Plaintiff has failed to offer any evidence that the explosion was caused by the actionable negligence of defendants.

The motion for nonsuit should have been allowed. The judgment below is

Reversed.