ANNIE MARTIN v. THE JEWEL BOX OF ASHEBORO, NORTH CAROLINA,
INCORPORATED

No. 6919SC420

(Filed 22 October 1969)

1. Poisons;   Negligence § 29—   inhalation of powder from fluorescent
   tubes — nausea — proximate cause — nonsuit

   Plaintiff's testimony that she became nauseated and was unable to eat
   for a long period of time as a result of inhaling the powder released
   from a fluorescent light tube that fell from defendant's garbage can and
   broke on the sidewalk while plaintiff was passing by, *held* insufficient to
   withstand defendant's motion for nonsuit, where there was no evidence
   relating to the contents of the tube or to the nature of plaintiff's illness,
   nor was there medical evidence that plaintiff's illness was of such a
   character that would probably, in the light of medical experience, be
   caused by inhaling the chemical components of the powder.

2. Negligence § 8—   proximate cause

   There must be causal relationship between the breach of duty by defend-
   ant and the injury received by plaintiff.

APPEAL by defendant from *Crissman, J.*, 7 April 1969 Civil Ses-
sion Superior Court of RANDOLPH County.

This action was instituted on 4 November 1955 for the recovery
of damages resulting from personal injury allegedly caused by de-
fendant's negligence. The matter came on for trial at the 7 April
1969 Session of the Superior Court of Randolph County. The jury
awarded plaintiff $1000 and defendant appealed.

Plaintiff alleged that on or about 3 December 1952, defendant
through its agents and employees, deposited, in a careless and reck-
less manner, in a garbage can located on the sidewalk of North Street
poisonous fluorescent light bulbs which had been burned out. Plain-
tiff, a seamstress, maintained her business in an upstairs room in the
same building in which defendant operated its business. The gar-
bage can is located immediately across from the stairway leading to
the upstairs portion of the building. On 3 December 1952, after plain-
tiff had closed her shop and at about 6 o'clock p.m. "as she passed
by said garbage can of the defendant, it had several dangerous used
fluorescent light tubes negligently and carelessly stuck in the said
garbage can with their ends sticking out at various angles. That
these tubes were on the top of the other garbage, and as the plain-
tiff passed by the said garbage can one of the dangerous and poison-
ous tubes fell out and broke immediately in her presence, setting up
phosphors light powder, which the plaintiff alleges upon information
and belief, contained beryllium and other unknown poisonous sub-

stances. That when the poisonous used fluorescent tube fell to the sidewalk immediately beside the garbage can immediately in the presence of the plaintiff, it created a loud cracking sound which frightened the plaintiff, which caused her to inhale some of the fumes through her mouth, and thus, proximately caused her to become ill and sick . . ." Plaintiff further alleged that "the defendant, with full knowledge of the use of said sidewalk as aforesaid by the plaintiff, carelessly, negligently, wrongfully, and unlawfully, and in an unsafe and insecure manner, deposited these tubes or tube in such a manner that they were unsafe, unstable and created a dangerous condition for the plaintiff."

Plaintiff testified that she had been across the street and was coming back "and all these boxes and garbage was stacked up higher than your head, and one of those things fell out. It was a light bulb. It was a fluorescent light bulb. It just popped like a gun. I thought I was shot at. I screamed as loud as I could holler and I jumped, and by that time the policeman from across the street was hold of me. He cleaned up the glass. If I hadn't screamed, I wouldn't have inhaled it. It went into my stomach." No one ever put their garbage there except the Jewel Box. "I worked out there every day and saw them pack garbage out there."

On cross-examination plaintiff testified that the garbage was right up in front of her stair steps, just the width of the sidewalk from the entrance. The garbage was all along the edge of the sidewalk. "I certainly did see fluorescent light tubes." "I didn't hit the boxes with my arm. I didn't touch the boxes at all. I am sure of that. The fluorescent tubes were somewhere in those boxes. I don't know where. They were stuck up there." "I don't know how big the tube was. I don't know which tube fell." "I just know the tube fell, that's all I know. It fell from where they were stuck in the boxes or packages or wherever they were." "I was so sick I didn't never think of making a chemical analysis of the glass that was broken. . . . I just know I got sick from it that night." "I didn't count the number of tubes. There usually was one or two every now and then put out. There was always a garbage can right there in front of the steps. I couldn't tell you. They were somewhere. I don't know how they were stacked up. I didn't get down to see how they packed them up." Plaintiff further testified with respect to her medical expenses and that she had been treated by three doctors as the result of her illness.

Plaintiff offered no other evidence. Defendant moved for judgment as of nonsuit, which was denied. Defendant offered no evidence but renewed its motion which was denied.

*Ottway Burton for plaintiff appellee.*

*Jordan, Wright, Nichols, Caffrey and Hill, by Karl N. Hill, Jr., for defendant appellant.*

MORRIS, J.

Defendant, among others, assigns as error the overruling of his motion for judgment of nonsuit.

[1]   Our review of the evidence leads us to the inescapable conclusion that the plaintiff has failed to show any causal connection between her alleged injuries and the alleged negligent act, if, indeed, she has shown any negligent act. Plaintiff produced no expert testimony, either medical or with respect to the contents of the fluorescent tube. She alleges in her complaint that the breaking of the tube set up phosphors light powder which contained beryllium and other unknown poisonous substances. Her evidence is completely devoid of any proof of what elements the tube, or powder, contained or whether whatever it contained was or could be harmful if inhaled.

[2]   If it be conceded that plaintiff has sufficiently shown that defendant was negligent in placing the tubes in the garbage can, the question still remains as to whether this alleged negligence was the proximate cause of plaintiff's injuries. There must be causal relationship between the breach of duty by defendant and the injury received by plaintiff. *Reason v. Sewing Machine Co.,* 259 N.C. 264, 130 S.E. 2d 397 (1963).

In the *Reason* case, plaintiff had alleged that she received serious and permanent injury to her eyes from oil sprayed from a sewing machine. There was medical testimony that hot oil could have caused the disease or that unheated oil might, depending upon its chemical composition. There was no evidence that the oil was hot nor was there evidence of its chemical composition. The Court affirmed the trial tribunal's granting of motion for judgment as of nonsuit and quoted from the case of *Hanrahan v. Walgreen Co.,* 243 N.C. 268, 90 S.E. 2d 392 (1955), where plaintiff had alleged injury resulting from a poisonous substance in a hair rinse. There the Court, in sustaining a nonsuit, said, "It may be there was a poisonous substance in the hair rinse, but there is no evidence to support such a conjecture."

[1]   There is no evidence of the nature of plaintiff's illness, except her own evidence that she was very nauseated and could not eat for a long period of time. Neither is there any medical evidence as to whether plaintiff's illness was of such character that it could or

would probably, in the light of medical experience, be caused by inhaling the chemical components of the fumes or powder resulting from the breaking of the fluorescent tube. *Reason v. Sewing Machine Co., supra.*

Defendant's other assignments of error are not discussed since we reach the conclusion that plaintiff's evidence is not sufficient to establish actionable negligence and the motion for nonsuit should have been granted.

Reversed.

MALLARD, C.J., and HEDRICK, J., concur.