State v. Duvall

STATE OF NORTH CAROLINA v. CLAUDIE CLARA DUVALL

No. 80ISC821

(Filed 3 March 1981)

1. **Automobiles § 131—accessory after the fact to hit and run driving — proof required**

    In order to convict defendant for being an accessory after the fact to a hit and run accident resulting in injury and death, the State was required to prove (1) that the principal was driving the vehicle involved in an accident resulting in injury to or death of the victim, that the principal so knew, and that he failed to stop his vehicle immediately at the scene; (2) the alleged accessory gave personal assistance to the principal to aid in his escaping detection, arrest, or punishment; and (3) the alleged accessory knew the principal committed the felony.

2. **Courts § 9.1; Jury § 2.1— motion for special venire denied — subsequent granting of motion by another judge proper**

    The trial judge did not err in granting the State's motion for a special venire on 4 December 1979 after another judge had denied such a motion on 7 June 1979, since an order granting a special venire was a pretrial interlocutory order, the granting or denial of which was within the trial court's discretion; more than five months had elapsed between the two motions for a special venire, and the State presented additional and current evidence that defendant would not be able to receive a fair and impartial trial before a jury comprised of residents of the county where he was a prominent citizen and where considerable publicity had occurred; and the circumstances thus had changed between the time of the two motions so that the trial judge did not abuse his discretion by hearing and

State v. Duvall

granting the renewed motion. Moreover, there was no merit to the contention of defendant, who was charged with being an accessory after the fact to a felony, that the trial court erred in denying his motion that a special venire be called from a county other than Perquimans on the ground that the earlier trial of the principal before jurors of that county, in addition to newspaper coverage of the trials, created prejudicial pretrial publicity.

### 3. Judges § 5— no bias of judge — disqualification not required

In a prosecution of defendant for being an accessory after the fact to a felony, there was no merit to defendant's contention that he was deprived of a fair trial because the judge was biased against him, as he had presided over the earlier trial of the codefendant principal, where testimony that tended to incriminate the present defendant was heard, and defendant did not show bias of the judge in (1) denying defendant's motion to challenge a juror out of the presence of the other jurors and announcing his decision before the jurors, (2) admonishing defendant, when he embarked upon an irrelevant topic during direct examination, not to volunteer answers, and (3) denying defendant's motion for recess and continuing the trial into the evening hours.

### 4. Criminal Law § 48— silence of defendant — res gestae — admissibility of evidence

In a prosecution of defendant, a deputy sheriff, for being an accessory after the fact to a felony, defendant's silence at the scene of the alleged crime was relevant in that defendant failed to share his knowledge of facts concerning a crime with a fellow police officer who was investigating that crime; his silence under the circumstances implied his knowledge of or participation in a cover-up; and at the time of his silence, defendant was not under arrest or subject to interrogation.

### 5. Criminal Law § 88.2— witness's opinion as to defendant's guilt — cross-examination properly limited

In a prosecution of defendant for being an accessory after the fact to hit and run driving, there was no merit to defendant's contention that the trial court should not have sustained the State's objections to questions on cross-examination of the investigating officer because the officer's answers would have shown that he did not suspect defendant's involvement in the alleged cover-up, since the investigating officer's opinion as to defendant's guilt was irrelevant to the issue of whether defendant was actually involved and the question of his guilt or innocence was properly one for the jury.

### 6. Criminal Law § 89.3— records of investigating officer — prior testimony — no impeachment

There was no merit to defendant's contention that the investigating officer's testimony and portions of his notes from the investigation would have impeached his credibility and that the trial court therefore erred in excluding them during cross-examination, where the investigating officer's testimony that he was not suspicious that a cover-up might be occurring was not inconsistent with his statement that he had no suspects at the time he began investigating, and the officer's notes were not competent, as reports of investigating officers are the

work product of the prosecution and there is no constitutional right to their examination.

**7. Criminal Law § 33— defendant as suspect — evidence properly excluded**

In a prosecution of defendant for being an accessory after the fact to hit and run driving, the trial court did not err in denying admission of statements of an SBI agent as to whether defendant was a suspect, and there was no merit to defendant's contention that these statements would have shown that he cooperated in the investigation, thereby negating his involvement in a cover-up, since the answers contained in the record did not support defendant's theory, and defendant's cooperation with investigators on 23 February would not demonstrate that he had not been involved at the time of the alleged cover-up, 19 and 20 February.

**8. Criminal Law § 62— defendant's willingness to take polygraph test — evidence properly excluded**

In a prosecution of defendant for being an accessory after the fact to hit and run driving, there was no merit to defendant's contention that the trial court should have admitted evidence concerning whether he was willing to take a polygraph test as demonstrative of his cooperation with investigators, since such evidence was irrelevant to defendant's actions at the time of the alleged cover-up, and such testimony would create an inference that defendant took and passed a polygraph test, but polygraph results are not admissible in this State.

**9. Criminal Law § 52— improper hypothetical question — expert testimony properly excluded**

In a prosecution of defendant for being an accessory after the fact to hit and run driving, the trial court did not err in sustaining the State's objection to a question put to the State's expert witness concerning the height of an automobile's bumper if the brakes were applied, since the hypothetical question was based on facts not in evidence and was therefore improper.

**10. Criminal Law § 65— psychiatrist's definition of panic — defendant suffering panic — evidence properly excluded**

In a prosecution of defendant for being an accessory after the fact to hit and run driving, the trial court did not err in excluding testimony of defendant's expert psychiatric witness giving his definition of panic and his opinion as to whether defendant suffered panic upon discovery of the accident victim's body, since the general definition of panic is one a layperson would know and understand and no expert testimony was therefore necessary; the record did not indicate that the psychiatrist was treating defendant as a regular patient with a view toward treatment or cure so that the correct form of the question as to whether the psychiatrist was of the opinion that defendant panicked would have been a hypothetical question rather than a direct one; the opinion sought was therefore based upon facts not in evidence and so was properly excluded; defendant sought to introduce the expert testimony to establish that he was confused and not thinking logically upon discovering the body, but diminished capacity is not a defense, nor did defendant attempt to establish a defense of insanity; and defendant himself testified in effect that he had panicked and the substance of the

State v. Duvall

proffered expert testimony was therefore before the jury.

**11. Criminal Law § 90— witness not declared hostile**

The trial court did not err in refusing to declare a defense witness a hostile witness during his redirect examination since the witness's testimony and his answer given outside the presence of the jury did not demonstrate an unwillingness to answer or an interest adverse to defendant's.

**12. Criminal Law § 43— photograph of accident victim — admissibility**

In a prosecution of defendant for being an accessory after the fact to hit and run driving, the trial court did not err in admitting into evidence a photograph of the accident victim, since the photograph was relevant in establishing the identity of the victim, and the picture was used to illustrate the testimony of a witness.

**13. Criminal Law § 101.3— jury view of automobile — propriety**

In a prosecution of defendant for being an accessory after the fact to a hit and run accident and for willful failure to discharge official duties as a county deputy sheriff, the trial court did not err in denying defendant's motion to have the jury view the automobile in question at night rather than in daylight, though defendant first observed the car at night, since SBI agents who were testifying examined the vehicle during the day, and any change in the appearance of the automobile was not substantial and defendant had the opportunity to point out any differences.

**14. Criminal Law § 77.1— accident report prepared by defendant deputy sheriff — report voluntarily made**

In a prosecution of defendant for being an accessory after the fact to a hit and run accident and for willful failure to discharge official duties as a county deputy sheriff, the trial court did not err in denying defendant's motion to suppress the accident report which he submitted to the county sheriff, since defendant, as a deputy sheriff, had a duty to make the report under G.S. 20-166.1(e); defendant's performance of an official duty in the course of his job did not amount to official coercion and did not support his motion to suppress; defendant did not resist or object to making his report; defendant had several days to write the report at the time and place he desired; and defendant showed the document to his attorney before submitting it.

**15. Automobiles § 131.2— hit and run driving — instructions proper**

In a prosecution of defendant for being an accessory after the fact to hit and run driving, evidence was sufficient to support the trial court's instruction that the jury could find defendant guilty if it should find that defendant directed that dirt be knocked off a post so that it would look like the post had been hit by the car in question.

**16. Automobiles § 131.2— hit and run driving — guilty knowledge — instructions sufficient**

In a prosecution of defendant for being an accessory after the fact to hit and run driving, the trial court's instructions made it clear that, to establish the necessary guilty knowledge, the State must show that the principal knew that a

person had been injured or killed in the accident in question.

**17. Criminal Law § 142— probation — trial court's exercise of discretion proper**

There was no merit to defendant's contention that he should have been placed on probation and that the trial judge failed to exercise his discretion and dismissed the motion for probation summarily, since a full presentencing hearing was held, during which defendant was allowed to present and discuss his views, and the State made no recommendation regarding sentencing.

APPEAL by defendant from *Brown, Judge.* Judgment entered 29 February 1980 in Superior Court, DARE County. Heard in the Court of Appeals 14 January 1981.

Defendant was indicted for being an accessory after the fact to a hit-and-run accident resulting in injury and death, and for willful failure to discharge official duties as a deputy sheriff of Dare County. Defendant pleaded not guilty. Defendant was tried before a special venire of jurors called from Perquimans County.

Evidence for the state tends to show the following:

Cloice Creef, an 87-year-old man, was seen alive about 6:30 p.m. on 19 February 1979 when he left his home on highway 64-264 near Manteo, North Carolina. His body was found in a ditch along that highway the following day. An autopsy revealed that the location, nature, and extent of Creef's injuries indicated he had been struck from behind by a motor vehicle.

Trooper J. W. Bonner of the highway patrol was on duty 20 February 1979. He routinely investigates accidents in Dare County and assists officers from the sheriff's department. On the afternoon of 20 February, deputy sheriff Duvall, defendant in this case, approached Bonner and told him that a body had been found. The two drove in Bonner's patrol car to the scene of the accident. When Bonner asked Duvall what was going on, the latter replied two boys had found a body, adding "Bonner, I know something about what happened. My God, if I had only knew last night." Duvall continued telling Bonner that while he was at Manteo Memorial Clinic, Malcolm and Charles Fearing came in and told him that Charles had had an accident in Malcolm's automobile. Duvall later met the Fearings and all three searched the road for whatever Charles had hit, which Charles thought was a traffic sign. Duvall told Bonner he went home after being unable to find anything.

While Bonner and Duvall were at the scene of the accident, Charles and Malcolm Fearing drove up. They showed Bonner an old post they thought Charles had struck the night before. Duvall was present but did not say anything else about other events of that evening.

Bonner went to the automobile body shop where the Fearings had left the car after Duvall had told them they could take it. The car had sustained considerable damage to the front end and windshield. Glass particles retrieved from Creef's clothing matched those found at the scene and in the car. Ashes taken from Charles Fearing's fireplace revealed metal fragments which matched the metal in the nails and buckle of the one shoe found on Creef's body.

On 21 February 1979, the sheriff of Dare County asked Duvall to write a report of the accident. Duvall previously had not directly reported anything to the sheriff about the accident. Duvall returned his report on 23 February, after showing it to his attorney. The report was later turned over to the SBI.

After a *voir dire* during trial, the report was read into evidence. It described the Fearings' contacting him at the clinic, his searching of the highway, and his being shown a hat and shoe the Fearings had found. The report stated that the next day while the Fearings were looking for what Charles had hit, they had flagged down Duvall and pointed out the body. Duvall did not stop, but went directly to Charles's house. He asked Charles what he had done with the shoe and Charles replied he had burned it. Duvall told the Fearings no one would believe they had hit a post and told Malcolm to knock dirt off the post they had found. Duvall's report further stated that he then left to find the sheriff, but when he arrived at the office, Keith Fearing, Malcolm's father, had already called to report the finding of the body.

At the close of the state's evidence, defendant's motion to dismiss was denied.

Defendant presented testimony by the two Fearings and others that tended to show that on 19 February 1979, Charles Fearing, his wife, and two friends were riding in Malcolm Fearing's car. Charles was driving. As Charles turned to hand something to a woman who was ill in the back seat, the windshield seemed to explode. The woman became hysterical, and Charles continued

driving to his home. No one realized they had hit a person; someone suggested they may have struck a sign. Charles picked up Malcolm and they searched unsuccessfully for what had been hit. They drove to the sheriff's office to report the accident, and asked for Duvall, who was at the clinic. On their way home they again searched the area and found a hat and a shoe near the road. When Duvall came to the house they showed him these objects, which Duvall told them to dispose of. They all searched the road once more, but found nothing.

The next morning the Fearings asked Duvall if a patient at the clinic might have been involved in the accident. Duvall assured them she had not and told Malcolm he could get the car repaired. The Fearings resumed searching the scene and found an old wooden post. They met Duvall, showed him the post, and decided that was not the object Charles had hit. They then discovered the body and Duvall sent Charles home, as he had become very upset. Duvall and Malcolm drove past the body again, but did not stop except to retrieve the post. Upon reaching Charles's house, Duvall told Malcolm to beat the post to knock off the dirt, and then told Charles to sweep up the debris. He asked about the hat and shoe and felt through the ashes after being told the items had been burned. Duvall said he was going to the sheriff's office and told Malcolm and Charles to wait a few minutes before reporting the body. Duvall acted surprised when he was told about the Fearings' finding a body.

Duvall testified on his own behalf that while he was at the clinic, he was approached by the Fearings, who thought Charles may have hit a sign. He went to look at the car, but left after receiving a radio call. He later rode up and down the highway with the Fearings but found nothing. He was shown a shoe they had found, and was told they also had found a hat, but he only remembered telling Charles he didn't care what was done with them. Duvall spent the rest of the night on a helicopter call. He did not report the accident that night because he thought it was simply a case of a sign being hit.

Duvall further testified that when the Fearings flagged him down the next day, saying they had found a body, he became upset and confused, and could not remember the subsequent events clearly.

Only the accessory charge was submitted to the jury. From a

verdict of guilty and a judgment imposing a sentence of imprisonment, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the State.*

*James, Hite, Cavendish & Blount, by Marvin Blount, Jr., and Aldridge, Seawell & Khoury, by G. Irvin Aldridge, for defendant appellant.*

MARTIN (Harry C.), Judge.

Defendant brings forward twenty-three assignments of error. For organizational purposes in this opinion, those arguments which we feel merit discussion will be grouped into subdivisions.

[1] We note at the outset that in order to convict defendant of being an accessory after the fact under N.C.G.S. 14-7, the state must prove the following: (1) the felony has been committed by the principal; (2) the alleged accessory gave personal assistance to that principal to aid in his escaping detection, arrest, or punishment; and (3) the alleged accessory knew the principal committed the felony. *State v. Atkinson,* 298 N.C. 673, 259 S.E.2d 858 (1979); *State v. Squire,* 292 N.C. 494, 234 S.E.2d 563 (1977); *State v. Martin,* 30 N.C. App. 166, 226 S.E.2d 582 (1976). To prove the first element, the state in this case must show that the principal was driving the vehicle involved in an accident resulting in injury to or death of the victim, that the principal so knew, and that he failed to stop his vehicle immediately at the scene. *State v. Wilson,* 264 N.C. 373, 141 S.E.2d 801 (1965); *State v. Overman,* 257 N.C. 464, 125 S.E.2d 920 (1962); *State v. Fearing,* 48 N.C. App. 329, 269 S.E.2d 245, *cert. denied,* 301 N.C. 99 (1980).

I.

[2] Two of defendant's assignments of error concern the special venire called from Perquimans County. Defendant contends that Judge Brown erred in granting the state's motion for a special venire on 4 December 1979 after Judge Browning had denied such a motion on 7 June 1979. He argues that the order impermissibly overruled the other judge's earlier ruling.

It is true that one superior court judge ordinarily may not overrule a prior judgment of another superior court judge in the same case on the same issue. *Calloway v. Motor Co.,* 281 N.C. 496,

189 S.E.2d 484 (1972); *State v. McClure,* 280 N.C. 288, 185 S.E.2d 693 (1972); *Carr v. Carbon Corp.,* 49 N.C. App. 627 (1980). However, this rule is inapplicable to interlocutory orders, which do not determine the issue, but rather direct some proceeding preliminary to a final decree. *Carr, supra.* A motion for a special venire is a pretrial order, the granting or denial of which is within the trial court's sound discretion. N.C. Gen. Stat. 15A-958. *See also State v. Yoes and Hale v. State,* 271 N.C. 616, 157 S.E.2d 386 (1967). "Interlocutory orders are subject to change 'at any time to meet justice and equity of the case upon sufficient grounds shown for the same.'" *Calloway, supra* at 502, 189 S.E.2d at 488. Therefore, when the circumstances have changed during the time between the original denied motion and the subsequent renewed motion, a trial judge may, in his discretion, grant the renewed motion in the interest of justice.

More than five months elapsed between the two motions for a special venire. The state presented additional and current evidence that defendant would not be able to receive a fair and impartial trial before a jury comprised of residents of Dare County, where he was a prominent citizen and where considerable publicity had occurred. We hold that Judge Brown did not abuse his discretion by hearing and granting the renewed motion. Furthermore, in the same order, the court granted defendant's motion for a trial separate from codefendant Malcolm Fearing, which motion had previously been denied by a different superior court judge. As defendant was a beneficiary of the court's action, he is hardly in a position to complain of the propriety of that order.

Defendant contends that the court erred in denying his motion that a special venire be called from a county other than Perquimans. He argues that the earlier trial of Malcolm Fearing before jurors of that county, in addition to newspaper coverage of the trials, created prejudicial pretrial publicity.

As previously discussed, a motion for a special venire is addressed to the trial court's sound discretion. Its rulings will not be disturbed on appeal absent a clear showing of abuse. *State v. Hopper,* 292 N.C. 580, 234 S.E.2d 580 (1977); *State v. Brower,* 289 N.C. 644, 224 S.E.2d 551 (1976). Similarly, the trial judge is vested with broad discretion in determining the competency of the jurors. N.C. Gen. Stat. 9-14; *State v. Noell,* 284 N.C. 670, 202 S.E.2d 750 (1974), *death penalty vacated,* 428 U.S. 902 (1976). A party has no

right to seat a particular juror, but only to reject one who is prejudiced against him. *State v. Williams*, 275 N.C. 77, 165 S.E.2d 481 (1969). *See also State v. Corl*, 250 N.C. 258, 108 S.E.2d 615 (1959).

We have carefully reviewed defendant's motion and the seventy-four pages of the record which contain the jury selection process and are satisfied that Judge Brown did not abuse his discretion in determining that the jurors from Perquimans County would afford defendant a fair trial. *See Brower, supra.* These assignments of error are overruled.

## II.

[3] Defendant assigns error to the denial of his motion for the trial judge's disqualification under N.C.G.S. 15A-1223. Defendant asserts that he was deprived of a fair trial because the judge was biased against him, as he had presided over the earlier trial of codefendant Malcolm Fearing, where testimony that tended to incriminate the present defendant was heard. Defendant supports his theory by reference to other of his assignments of error, which he alleges demonstrate Judge Brown's actual bias during trial.

N.C.G.S. 15A-1223(b)(1), (4) provides:

(b) A judge, on motion of the State or the defendant, must disqualify himself from presiding over a criminal trial or other criminal proceeding if he is:
(1) Prejudiced against the moving party or in favor of the adverse party; or

. . . .

(4) For any other reason unable to perform the duties required of him in an impartial manner.

As an impartial judge is a prime requisite of due process, a judge's personal interest in the outcome of a case is considered sufficient ground for his disqualification. *Ponder v. Davis*, 233 N.C. 699, 65 S.E.2d 356 (1951). But in the absence of substantial evidence in the record of personal interest or bias, a judge will not be required to recuse himself. *Love v. Pressley*, 34 N.C. App. 503, 239 S.E.2d 574 (1977), *disc. rev. denied*, 294 N.C. 441 (1978); *In re Custody of Cox*, 24 N.C. App. 99, 210 S.E.2d 223 (1974), *cert. denied*, 286 N.C. 414 (1975). Even in instances where a judge has presided over an earlier trial of the same defendant, he need not be disquali-

fied absent evidence that the prior trial would have a prejudicial effect on the rulings and outcome of the present case. *Love, supra; Perry v. Perry,* 33 N.C. App. 139, 234 S.E.2d 449, *disc. rev. denied,* 292 N.C. 730 (1977). *See also State v. Vega,* 40 N.C. App. 326, 253 S.E.2d 94, *disc. rev. denied,* 297 N.C. 457, *cert. denied,* 444 U.S. 968 (1979); *Cox, supra.*

Defendant contends that certain comments made by the judge in the presence of the jury and his refusal to recess upon defendant's motion illustrate Judge Brown's actual prejudice toward defendant and created an unfavorable atmosphere during the course of the trial. During jury selection, after counsel for defendant had apparently used all his peremptory challenges, counsel approached the bench and requested permission to challenge a juror out of the presence of the other jurors. The court denied defendant's motion and announced his decision before the jurors. From the record, we find that Judge Brown followed the jury selection procedure outlined in N.C.G.S. 15A-1214, which makes no provision for in-chambers or bench conference rulings on a juror's competence. No special circumstances are evident which would have justified defendant's motion, and Judge Brown properly exercised his discretion in so denying it.

During direct examination, defendant had embarked upon an irrelevant topic and Judge Brown admonished him not to volunteer answers. Defendant argues this incident also demonstrates the judge's prejudice toward him. The judge's warning was entirely proper. *See State v. Herbin,* 298 N.C. 441, 259 S.E.2d 263 (1979); *State v. Chandler,* 30 N.C. App. 646, 228 S.E.2d 69 (1976). We do not find that Judge Brown's comments constituted an impermissible expression of opinion. The trial judge has a duty, as well as a right, to conduct the trial in an orderly, efficient manner. *See State v. Frazier,* 278 N.C. 458, 180 S.E.2d 128 (1971).

Defendant also insists that the judge's denial of his motion to recess showed bias against him. Additionally, he asserts that the extended courtroom hours deprived him of effective assistance of counsel by abridging preparation time between sessions. We find that Judge Brown was well within his discretion in continuing this lengthy trial into the evening hours, to maintain its momentum in the interest of the efficient administration of justice. *See Frazier, supra.* These assignments of error are without merit.

### III.

Defendant assigns error to numerous portions of the testimony which were admitted over his objections or refused admission upon sustention of the prosecutor's objections.

Defendant first contends that the trial court erred in overruling his objections to a series of questions directed to trooper Bonner regarding defendant's actions at the scene where the body was discovered. During direct examination, Bonner testified that defendant had not said anything to him about the post, about his having seen the body earlier, or about his being at Charles Fearing's house after the discovery of the body. Defendant contends these questions were leading and called for responses which were improper hearsay. He further contends his silence was used at trial to show his culpability, denying him of his fifth amendment rights.

**[4]** The questions concerned defendant's conduct at the scene of the alleged crime. Conduct, in this case defendant's silence, is subject to exclusion as hearsay as an expression of the actor's thoughts. *See* 1 Stansbury's N.C. Evidence § 142 (Brandis rev. 1973). However, anything that a defendant has done that is relevant to the case and not subject to some specific exclusionary rule or statute may be used against him as an admission. 2 Stansbury, *supra*, § 167. "An admission may be *implied* or inferred from any conduct of a party which fairly indicates a consciousness of the existence of a relevant fact." 2 Stansbury, *supra*, § 178 (emphasis in original). While not sufficient standing alone, conduct may be considered in connection with other facts in determining whether it constitutes an admission. *Id.* Here, defendant's silence is relevant in that he failed to share his knowledge of facts concerning a crime with a fellow police officer who was investigating that crime. His silence under the circumstances implies his knowledge of or participation in a cover-up. *Cf. State v. Lampkins*, 283 N.C. 520, 196 S.E.2d 697 (1973) (evidence of flight as admission); *State v. Wilson*, 23 N.C. App. 225, 208 S.E.2d 393 (1974) (defendant's agreeing, but failing, to come to discuss accusations constituted evidence of admission where later efforts to locate him were unsuccessful).

"Silence alone, in the hearing of a statement, is not what makes it evidence of probative value, but it is in connection with some circumstance or significant conduct on the part of the listener that gives the statement evidentiary weight." *State v. Evans*, 189 N.C

233, 235, 126 S.E. 607, 608 (1925). In the case *sub judice*, defendant's silence was not used to prove the truth of a statement made in his presence which he would have been expected to deny if it were false. Rather, it was part of the *res gestae*, the circumstances surrounding the crime. *See State v. Cawthorne*, 290 N.C. 639, 227 S.E.2d 528 (1976). Defendant was not then under arrest nor subject to interrogation. Therefore we find no merit in defendant's reliance on *State v. Moore*, 262 N.C. 431, 137 S.E.2d 812 (1964) (right to remain silent upon accusations of investigating officers), and *State v. Guffey*, 261 N.C. 322, 134 S.E.2d 619 (1964) (silence in face of incriminating statements are admissions only in limiting circumstances). Additionally, the trial court has considerable discretion in allowing leading questions. *State v. Harris*, 290 N.C. 681, 228 S.E.2d 437 (1976); *State v. Smith*, 290 N.C. 148, 226 S.E.2d 10, *cert. denied*, 429 U.S. 932 (1976). We hold that these questions, and answers thereto, were not improperly allowed.

**[5,6]**   Defendant contends that the court should not have sustained the state's objections to questions on cross-examination of Bonner. Defendant argues Bonner's answers would have shown that he did not suspect defendant's involvement in the alleged cover-up. These objections were properly sustained, as Bonner's opinion as to defendant's guilt was irrelevant to the issue of whether defendant was actually involved. The question of his guilt or innocence was properly one for the jury. *E.g., State v. Forrest*, 262 N.C. 625, 138 S.E.2d 284 (1964). We further find no merit in defendant's argument that Bonner's testimony and portions of his notes from the investigation would have impeached his credibility. Bonner's answer, contained in the record, that he was at that time becoming suspicious that a cover-up might be occurring, is not inconsistent with his statement that he had no suspects at the time he began investigating. Trooper Bonner's notes were not competent evidence, as "[r]eports of investigating officers are the work product of the prosecution, and there is no constitutional right to their examination." *State v. Jones*, 23 N.C. App. 686, 688, 209 S.E.2d 508, 510 (1974), *cert. denied*, 286 N.C. 418 (1975). Nor did defendant make a pretrial motion to examine the report. *See Jones, supra*. Furthermore, Judge Brown offered to allow the notes to be read into the record. Defendant's arguments are without merit.

**[7]**   Likewise, we find that the court committed no error in denying admission of statements of an SBI agent about whether defend-

ant was a suspect. Defendant contends these statements would have shown that he cooperated in the investigation, negating his involvement in a cover-up. The answers contained in the record do not support defendant's theory. Even if they did, defendant's cooperation with investigators on 23 February would not demonstrate that he had not been involved at the time of the alleged cover-up, 19 and 20 February.

[8]  Defendant argues the court should have admitted evidence concerning whether he was willing to take a polygraph test, as demonstrative of his cooperation with the investigators. Again, such evidence is irrelevant to defendant's actions on 19 and 20 February. Furthermore, although test results themselves were not offered into evidence, this testimony would create an inference that defendant took and passed a polygraph test. Polygraph results are not admissible in this state. *State v. Brunson*, 287 N.C. 436, 215 S.E.2d 94 (1975). *State v. Foye*, 254 N.C. 704, 120 S.E.2d 169 (1961).

[9]  Defendant contends the court erred in sustaining the state's objection to a question concerning the height of the automobile's bumper if the brakes were applied. The state's expert witness had just testified that, normally, application of the brakes would cause the front end to dip. Counsel for defendant then asked the witness:

> Q. If it could be shown that the front of the car was from three to four inches lower than seventeen inches at the time of the impact would it be your opinion that brakes had been applied?
> OBJECTION. SUSTAINED.
>
> . . . .
>
> (The witness whispered his answer to the court reporter:
> A. Under the proper conditions this could happen, yes.)

This question was improper because it was a hypothetical based on facts not in evidence. *See State v. Bock*, 288 N.C. 145, 217 S.E.2d 513 (1975), *death penalty vacated*, 428 U.S. 903 (1976); 1 Stansbury, *supra*, §§ 136, 137. There was no evidence that Charles Fearing had applied the brakes. In light of the witness's earlier testimony, even if the question had been proper, defendant was not prejudiced by the sustention of the objection.

State v. Duvall

**[10]**   Defendant argues that the court should have admitted the testimony of his expert witness, a psychiatrist, giving his definition of "panic" and his opinion of whether defendant suffered panic upon discovery of Creef's body.

Expert testimony and opinions are admissible on all matters where such testimony would be helpful to the jury because of the expert's superior knowledge. *Hubbard v. Oil Co.*, 268 N.C. 489, 151 S.E.2d 71 (1966); 1 Stansbury, *supra*, § 134. In this case, the general definition of panic is one a layperson would know and understand, and no expert testimony is necessary. In *State v. Wade*, 296 N.C. 454, 462, 251 S.E. 2d 407, 412 (1979), the Court articulated the general propositions regarding expert medical testimony to be:

> (1) A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, including the patient, if such information is inherently reliable even though it is not independently admissible into evidence. The opinion, of course, may be based on information gained in both ways. (2) If his opinion is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion. *Penland v. Coal Co., supra*, 246 N.C. 26, 97 S.E.2d 432 [1957].

When information is given the doctor by the patient in the course of treatment, there exists an assumption that the patient's self-interest will ensure that the information is true, thus qualifying it for the basis of opinion testimony. *Wade, supra.*

Here, the record does not indicate that Dr. Ravaris was treating defendant as a regular patient with a view towards treatment or cure. Dr. Ravaris testified he met with defendant for an hour and a half on 9 April 1979, at which time defendant told him about the events of 19 and 20 February 1979. If medical advice is sought merely for the purpose of defense at trial, the assumption of inherent truthfulness of the information given to the doctor is absent. *See Bock, supra; Ward v. Wentz*, 20 N.C. App. 229, 201 S.E.2d 194 (1973). Thus the correct form of the question as to whether Dr. Ravaris was of the opinion that defendant panicked would have been a hypothetical question, rather than a direct one. *See* 1 Stansbury, *supra*, § 136; *Bock, supra.* As the opinion sought was based

State v. Duvall

upon facts not in evidence, the court properly excluded this testimony.

It is apparent that defendant sought to introduce the expert testimony as evidence that he in fact did panic, to establish that he was confused and not thinking logically upon discovering the body. Diminished capacity is not a defense, nor did defendant attempt to establish a defense of insanity. *Cf. Bock, supra* (amnesia itself no defense to criminal charge); *State v. Baldwin,* 276 N.C. 690, 174 S.E.2d 526 (1970) ("pathological intoxication" not a defense to murder charge). Defendant's evidence that he panicked or became confused would not tend to negate any of the necessary elements of the crime, discussed earlier in this opinion. Additionally, defendant himself testified, in effect, that he had panicked; therefore, the substance of the proffered expert testimony was before the jury and defendant was not prejudiced by the denial of its admission.

[11] Defendant further contends that the court erred in refusing to declare Charles Fearing a hostile witness during his redirect examination, which would have allowed defendant to ask leading questions to impeach Fearing's credibility. The settled rule in North Carolina is that a party may not impeach his own witness. *State v. Pope,* 287 N.C. 505, 215 S.E.2d 139 (1971); *State v. Salame,* 24 N.C. App. 1, 210 S.E.2d 77 (1974), *cert denied,* 286 N.C. 419 (1975); 1 Stansbury, *supra,* § 40 (although the rule has been modified in civil cases by Rule 43(b), North Carolina Rules of Civil Procedure). The decision whether to declare a witness hostile or adverse rests within the trial court's sound discretion and will not be reversed absent a showing of abuse. *State v. Hairston,* 280 N.C. 220, 185 S.E.2d 633, *cert. denied,* 409 U.S. 888 (1972); *State v. Clanton,* 278 N.C. 502, 180 S.E.2d 5 (1971). The significance of excluded testimony must be made to appear in the record to be reviewable. *Currence v. Hardin,* 296 N.C. 95, 249 S.E.2d 387 (1978); *Spinella v. Pearce,* 12 N.C. App. 121, 182 S.E.2d 620 (1971). Here, we do not find that Charles Fearing's testimony, nor the answer given outside the presence of the jury, demonstrates an unwillingness to answer or an interest adverse to defendant's. Rather, it tended to negate his own guilty conduct involving the accident, which, if believed by the jury, would have exculpated defendant. Furthermore, defendant's witness Malcolm Fearing presented essentially the same evidence. We find no error or prejudice. These assignments of error are overruled.

## IV.

The next category of defendant's assignments of error deals with exhibits.

[12] Defendant objects to the state's use of a photograph of the accident victim, Cloice Creef. He contends no proper foundation was laid for the photograph's introduction, that it was not a fair and accurate representation, that it was not illustrative of the witness's testimony, that it was irrelevant and prejudicial, and that testimony regarding the photograph related to matters not yet in evidence.

Photographs are admissible if they tend to show circumstances relating to the crime. *State v. Westbrook*, 279 N.C. 18, 181 S.E.2d 572 (1971), *death penalty vacated*, 408 U.S. 939 (1972); *State v. Cutshall*, 278 N.C. 334, 180 S.E.2d 745 (1971). Although the pictures must portray a scene or person observed by the witness, they need not be an exact reproduction, nor must they have been made at the time the event occurred. *See State v. Lentz*, 270 N.C. 122, 153 S.E.2d 864, *cert. denied*, 389 U.S. 866 (1967). Here, the photograph was relevant in establishing the identity of the victim. The witness, Creef's son-in-law, after testifying as to his observations of Creef's actions on 19 February, was asked how Creef looked. The picture was used to illustrate his testimony. Minor discrepancies were pointed out. Any technical errors in the photograph's admission are harmless, as defendant had the opportunity to cross-examine the witness and it does not appear that he was prejudiced by its admission. *See State v. Cross*, 293 N.C. 296, 237 S.E.2d 734 (1977).

Defendant argues that the court erred in admitting the state's exhibits consisting of articles of Creef's clothing, particles of the automobile's windshield, ashes from Charles Fearing's fireplace, and fragments of wood and glass. He contends that there was no evidence that the Fearing automobile had not hit Creef and that this evidence only served to prejudice defendant by exciting the sympathy of the jury.

These exhibits tend to show a necessary element of the offense of accessory after the fact: that the principal crime was committed. *See Squire, supra; Martin, supra.* The fact that evidence may arouse the jury's emotions is not sufficient in itself for its exclusion. *See Cutshall, supra; Atkinson, supra.*

**[13]** Defendant argues that the court should have granted his motion to have the jury view the automobile at night, rather than in the daylight, as defendant first observed the car at night. The state contends the daytime view was proper because the SBI agents who were testifying examined the vehicle during the day. We agree.

Tangible objects are admissible where they relate to the crime. *See State v. Felton*, 283 N.C. 368, 196 S.E.2d 239 (1973). The damaged automobile was direct evidence that the hit-and-run accident had occurred. Any change in the appearance of the automobile under these conditions was not substantial and defendant had the opportunity to point out any differences. *See State v. Carnes*, 279 N.C. 549, 184 S.E.2d 235 (1971); *State v. McLeod*, 17 N.C. App. 577, 194 S.E.2d 861 (1973). The accessory charge against defendant did not rest solely on his own conduct that night. We hold that the daytime jury view was within Judge Brown's discretion. *See Huff v. Thornton*, 287 N.C. 1, 213 S.E.2d 198 (1975); *State v. Smith*, 13 N.C. App. 583, 186 S.E.2d 600, *cert. denied*, 281 N.C. 157 (1972).

Defendant objects to the court's refusal to allow into evidence a pair of ski gloves found in his car, as relevant to showing that he was set up. Again we find admission of such evidence was within the judge's discretion and find no abuse. Although evidence that a crime was committed by a third party is not admissible unless it directly points to the guilt of that party, *State v. Jenkins*, 292 N.C. 179, 232 S.E.2d 648 (1977), defendant was allowed to put before the jury his theory that he was set up and to testify as to the gloves. He was not prejudiced by their exclusion as an exhibit.

**[14]** Defendant contends that it was error for the court to deny his motion to suppress the accident report he submitted to the Dare County sheriff. A *voir dire* was held, at which both defendant and the state presented evidence and Judge Brown made findings of fact and conclusions of law. These findings are conclusive on appeal if supported by the evidence. *State v. Miley*, 291 N.C. 431, 230 S.E.2d 537 (1976); *State v. Blackmon*, 280 N.C. 42, 185 S.E.2d 123 (1971). Defendant argues that the court's conclusion that his report was voluntarily made is not supported by the evidence.

Defendant concedes that he had a duty to make the report under N.C.G.S. 20-166.1(e), and that extrajudicial admissions by a defendant are admissible if they are voluntarily and knowingly made. *State v. Muse*, 280 N.C. 31, 185 S.E.2d 214 (1971), *cert. denied*,

406 U.S. 974, *rehearing denied,* 409 U.S. 898 (1972). We cannot accept defendant's argument that his performance of an official duty in the course of his job amounted to official coercion and supported his motion to suppress. The record reveals no evidence that defendant resisted or objected to making his report. He had several days to write the report at the time and place he desired. He showed the document to his attorney before submitting it. There was no connection between defendant's being told to write the report and his later conversations with SBI agents. We find that the state carried its burden of proving that the report was admissible. *See State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503 (1970), *rev'd as to death penalty,* 403 U.S. 948 (1971). Looking to the entire record, we find no error in the trial court's conclusion that the statement was voluntarily made. *See State v. Silver,* 286 N.C. 709, 213 S.E.2d 247 (1975). We reject these assignments of error.

## V.

**[15]**  Defendant excepts to the following portion of the court's charge to the jury:

> So I charge that if you find from the evidence and beyond a reasonable doubt that on or about February 19, 1979, the crime of failure to immediately stop a 1972 Mercedes motor vehicle at the scene of an accident involving injury or death to Cloice H. Creef, was committed by Charles S. Fearing, that is to say that on or about February 19, 1979, Charles S. Fearing while driving a 1972 Mercedes, was involved in an accident in which Cloice H. Creef was physically injured or killed, and that Charles S. Fearing knew of the accident and wilfully failed to immediately stop at the scene, and that thereafter on or about February 20, 1979, the defendant, Claudie Clara Duvall, knowing Charles S. Fearing to have committed the felony of failure to immediately stop the 1972 Mercedes motor vehicle at the scene of an accident involving injury or death to Cloice H. Creef, assisted Charles S. Fearing to avoid apprehension, arrest, or punishment, by failing to report or investigate the accident or by failing to preserve evidence, or by directing that dirt be knocked off a post so it would look like it had hit the car, it would be your duty to return a verdict of guilty

of an accessory after the fact of failure to immediately stop the 1972 Mercedes motor vehicle at the scene of an accident involving injury or death to Cloice H. Creef.

However, if you do not so find, or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

Defendant argues the court erred in stating that if the jury should find that defendant directed that dirt be knocked off a post so that it would look like it had been hit by the car, the jury should find defendant guilty. He alleges that there is absolutely no evidence to support this instruction.

The evidence necessary for inclusion in a charge need not be direct statements of the witnesses. The necessary elements of a crime may be made out from clear inferences supplied by all the evidence presented. *See State v. Culter*, 271 N.C. 379, 156 S.E.2d 679 (1967). Malcolm Fearing testified that defendant suggested that he knock the dirt from the post. Charles Fearing stated that defendant directed him to sweep up the debris. Other portions of their testimony also support the inference that defendant suggested this action so as to make it appear that the post was the object which Charles Fearing struck. Defendant's official accident report also supports this inference. We find no error in the instruction.

**[16]**    Although defendant did not raise objections to other portions of the charge in his brief or in oral argument, we feel it necessary to comment on the portion concerning Charles Fearing's knowledge of the accident, as this Court has recently awarded a new trial for Malcolm Fearing on the basis of similar instructions. *State v. [Malcolm] Fearing* (filed 3 February 1981) (Hedrick, J., dissenting on grounds that this Court declared an assignment of error based on identical instructions to be without merit in *State v. [Charles]Fearing, supra*). The Malcolm Fearing case was overturned on the basis that the instruction implied that the driver's willful failure to stop upon knowledge that an accident had occurred, whether or not he knew that a person had been injured or killed, would support finding a violation of N.C.G.S. 20-166. Judge Wells, speaking for the Court, held that to establish the necessary guilty knowledge, the state must show that the driver knew that a *person had been injured or killed in the accident.* We hold in the case *sub judice* that the instruction, read in context, complied with this standard. The

phrase "if Charles S. Fearing knew of *the* accident" (emphasis added) clearly relates to the preceding clause and other portions of the charge describing the accident as that "in which Cloice H. Creef was physically injured or killed."

We find no error in the court's charge to the jury.

## VI.

Defendant assigns error to the court's denial of his motions to dismiss, to set aside the verdict as being contrary to the greater weight of the evidence, for judgment notwithstanding the verdict, for new trial, and for appropriate relief. Defendant contends that the state failed to carry its burden of proof and that the evidence is insufficient to support the verdict. We disagree.

The standards for granting these motions are well familiar and will not be reiterated here. A careful review of the record convinces us that the state presented evidence by which a reasonable jury could find beyond a reasonable doubt all the necessary elements of the crime of which defendant was charged, as set out at the beginning of this opinion.

[17]  Finally, defendant contends that he should have been placed on probation. Defendant recognizes that probation is not an absolute right, but is a matter of legislative grace. *State v. Hewett*, 270 N.C. 348, 154 S.E.2d 476 (1967). It rests within the sound discretion of the trial court. *See State v. Pope*, 257 N.C. 326, 126 S.E.2d 126 (1962); *State v. Stallings*, 234 N.C. 265, 66 S.E.2d 822 (1951). Defendant argues that Judge Brown failed to exercise his discretion and dismissed the motion summarily, citing the following dialogue: "MR. BLOUNT: Would you consider suspending it, Your Honor? COURT: No, sir." However, defendant ignores the fact that a full presentencing hearing was held, during which defendant was allowed to present and discuss his views, while the state made no recommendation regarding sentencing. The sentence imposed was well within the statutory limit set by N.C.G.S. 14-7 and we will not disturb it on appeal. *See State v. Legette*, 292 N.C. 44, 231 S.E.2d 896 (1977); *State v. Slade*, 291 N.C. 275, 229 S.E.2d 921 (1976).

We conclude that defendant received a fair trial, free from prejudicial error.

No error.

Judges WEBB and WHICHARD concur.