ANNIE C. SWANN AND CAROLYN D. SMITH, APPELLANTS v. LEN-CARE REST HOME, INC., ANDREW STEWART, AND SHELBIA NORRIS, APPELLEES

No. COA96-1283

(Filed 7 October 1997)

### 1. Hospitals and Medical Facilities or Institutions § 62 (NCI4th)— rest home—failure to restrain resident—negligence—sufficient evidence

The evidence was sufficient for the jury on the issue of negligence by defendant rest home and its employees in failing to restrain a ninety-eight-year-old resident at the time she fell and was seriously injured where the evidence tended to show that the resident's family had repeatedly requested that she be restrained when unattended because of her tendency to try to stand up; the resident had fallen at defendant's facility on two prior occasions; and a letter from one of the resident's physicians had requested that she be "restrained as necessary."

### 2. Negligence § 6 (NCI4th)— negligent infliction of emotional distress—insufficient evidence of emotional distress

Plaintiff failed to establish a claim for negligent infliction of severe emotional distress based on defendant rest home's failure to promptly give her accurate information about the nature and extent of injuries suffered by her grandmother in a fall where plaintiff testified that she did not go to the hospital the night of her grandmother's fall even after she was asked by a doctor whether she would authorize life support for her grandmother, and plaintiff admitted that she had never been to see a psychiatrist, psychologist, doctor or counselor for her alleged emotional distress and had never taken any medication to ease her condition.

Judge MARTIN, John C., concurring in part and dissenting in part.

Appeal by plaintiff from order entered 29 May 1996 by Judge Coy E. Brewer, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 9 September 1997.

Mrs. Annie C. Swann and Ms. Carolyn D. Smith, Mrs. Swann's granddaughter, sued the defendants, Len-Care, Andrew Stewart,

and Shelbia Norris alleging negligence and negligent infliction of emotional distress. At the close of the plaintiff's evidence, the trial court granted Len-care's motion for directed verdict pursuant to Rule 50(a).

In 1990 when she was 94 years of age, Annie C. Swann began living in a group living facility, Len-Care. Len-Care is a rest home, not a nursing home, and provides the same type of care that might be found in an individual's home. Len-Care does not provide one-on-one care for each resident. From 1991 to 1994, Mrs. Swann's medical condition declined and her confusion became worse. Carolyn D. Smith, Swann's granddaughter and a plaintiff, would regularly visit her grandmother and was actively involved in her grandmother's care. During the five years her grandmother was at the defendant's facility, Ms. Smith had asked the staff at the facility to put restraints on her grandmother because of her grandmother's tendency to try to stand up when unattended. During visits by Ms. Smith, she would find Mrs. Swann in the lobby unattended and not restrained. Ms. Smith would always bring this to the attention of the staff at Len-care. In 1994, Dr. Rucker signed an order indicating that Mrs. Swann was to be "restrained PRN." PRN means as needed.

On 31 December 1994, Andrew Stewart, a supervisor from Len-Care called Ms. Smith and told her that her grandmother had fallen out of her wheelchair and was on her way to the hospital. Mr. Stewart told Ms. Smith that her presence was not needed and that she would receive another call after her grandmother returned from the hospital. Later that night Ms. Smith received another call indicating that her grandmother would be staying overnight at the hospital for observation. Ms. Smith's impression from the second call was that Mrs. Swann's injuries were "nothing serious." Shelbia Norris, an administrator at Len-Care, was not working the night Mrs. Swann fell but received a phone call from Mr. Stewart informing her that Mrs. Swann had fallen. Ms. Norris went to the rest home later that night, but did not call any of Mrs. Swann's family members or make any inquires about Mrs. Swann at the hospital.

Ms. Smith's third telephone call came from Dr. Rucker at the hospital. He told Ms. Smith that he had put forty stitches in her grandmother's head and wanted to know whether or not he should put her on life support. Ms. Smith testified that this news made her "very upset and hurt." She felt she had been lied to by the defendants. On cross-examination, Ms. Smith admitted she had not seen a psycholo-

gist or any other doctor relating to the severe emotional distress this incident had caused her. Ms. Smith stated that she had been busy with her mother and father since the incident and had not had time to seek treatment for herself.

At the close of the plaintiff's evidence, the trial judge granted Len-Care's motion for directed verdict on both the negligence and negligent infliction of emotional distress claims.

Plaintiff appeals.

*The Lee Law Firm, P.A., by C. Leon Lee, II, for plaintiff-appellant.*

*Wishart, Norris, Henninger & Pittman, P.A., by G. Wayne Abernathy and Jim H. Joyner, Jr., for defendant-appellees.*

EAGLES, Judge.

[1] We first consider whether the trial court properly granted a directed verdict in favor of all defendants on the negligence claim. "In ruling on a motion for directed verdict, plaintiff's evidence must be taken as true and all the evidence must be viewed in the light most favorable to him, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, with conflicts, contradictions, and inconsistences being resolved in plaintiff's favor." *McMahan v. Bumgarner,* 119 N.C. App. 235, 237 457 S.E.2d 762, 763 (1995). The trial court should deny the motion if there is more than a scintilla of evidence to support each element of the non-movant's case. *Id.* As a general proposition, issues of negligence are ordinarily not susceptible of summary adjudication either for or against the claimant. Generally, the better practice is for the trial court to submit the case to the jury and enter a judgment notwithstanding the verdict if the evidence is insufficient to support the verdict. *Phelps v. Duke Power,* 76 N.C. App. 222, 229, 332 S.E.2d 715, 719 (1985); *McMahan v. Bumgarner,* 119 N.C. App. at 237-38, 457 S.E.2d at 763-64.

Defendants argue that the record is entirely devoid of any evidence that the defendants knew or should have known of the need to restrain Mrs. Swann on 31 December 1994. We disagree. Looking at the evidence in the light most favorable to the plaintiff, Mrs. Swann had fallen at the defendant's facility on two occasions prior to the 31 December 1994 fall. In 1994 Mrs. Swann was 98 years old. The family had repeatedly requested that Mrs. Swann be restrained when she was in the lobby because of her tendency to try and stand up. In a 30

June 1994 letter, Dr. Stewart had requested that the plaintiff be "restrained as necessary." Taken together this evidence is a sufficient basis upon which the jury could have found that the defendants were negligent in not having Mrs. Swann restrained at the time of her fall. We acknowledge that evidence supporting plaintiff's negligence claim is not overwhelming, especially in light of the fact that Len-Care is a rest home and not a nursing home; however, there is sufficient evidence to.permit a jury to decide the issue. Accordingly, we reverse the trial court's directed verdict and remand for a jury trial on the negligence issue.

[2] We next consider whether the trial court erred in granting defendant's directed verdict on the plaintiff's negligent infliction of emotional distress claim.

The three elements for negligent infliction of emotional distress are: 1) the defendant negligently engaged in conduct; 2) it was reasonably foreseeable that the conduct would cause the plaintiff severe emotional distress; and 3) the conduct did, in fact, cause severe emotional distress. *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). A physical impact or injury is not required to succeed on a claim for negligent infliction of emotional distress. However, where a defendant's negligent act has caused the plaintiff to suffer mere fright or temporary anxiety not amounting to severe emotional distress, the plaintiff may not prevail. *Id.* at 303-04, 395 S.E.2d at 97.

Plaintiff argues that because Mrs. Swann came from a very loving family and that the facility knew or should have known this fact, the failure to promptly give accurate information about the nature and extent of Mrs. Swann's injuries would cause this type of family member to suffer from severe emotional distress. In addition, plaintiff argues that even though Ms. Smith did not receive any medical treatment, she still has a claim. We disagree.

The term "severe emotional distress" means "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97. In *Waddle v. Sparks*, the plaintiff did not see a psychiatrist after the allegedly extreme and outrageous conduct was inflicted upon her. 331 N.C. 73, 85, 414 S.E.2d 22, 28 (1992). The Supreme Court held that "there is no forecast of any medical docu-

mentation of plaintiff's alleged severe emotional distress nor any other forecast of evidence of 'severe and disabling' psychological problems within the meaning of the test laid down in *Johnson v. Ruark.*" *Id.* Summary judgment was entered for the defendant.

Ms. Smith's emotional distress does not meet the definition of severe emotional distress as defined in *Johnson* and *Waddle.* Ms. Smith testified that she did not go to the hospital that night, even after she was asked by Mrs. Swann's doctor if Ms. Smith would authorize life support for her grandmother. She further admitted that she had never been to see a psychiatrist, psychologist, doctor, or counselor for treatment for her alleged severe emotional distress nor had she taken any medication to ease her condition. Accordingly, this assignment of error is overruled and the trial court's entry of directed verdict is affirmed.

Affirmed in part, reversed in part and remanded.

Judge TIMMONS-GOODSON concurs.

Judge MARTIN, John C., concurs in part and dissents in part.

Judge MARTIN, John C., concurring in part and dissenting in part.

I concur with that portion of the majority opinion which affirms the entry of a directed verdict in defendant's favor with respect to Carolyn Smith's claim for negligent infliction of emotional distress. However, I must respectfully dissent from that portion of the majority opinion which reverses the entry of a directed verdict as to Annie Swann's claim for negligence.

One asserting a claim for negligence has the burden of proving that defendant breached a duty of care owed to plaintiff and that such breach was a proximate cause of plaintiff's injury. *Hubbard v. Oil Co.*, 268 N.C. 489, 151 S.E.2d 71 (1966). "Just as negligence cannot be inferred from the mere fact of injury, the negligence of one's caretaker cannot be inferred from the mere fact that the person in [his] care suffers an accidental injury." *Stacy v. Jedco Construction, Inc.*, 119 N.C. App. 115, 122, 457 S.E.2d 875, 880, *disc. review denied*, 341 N.C. 421, 461 S.E.2d 761 (1995). The evidence must be sufficient to raise more than speculation, guess, or mere possibility and, if it fails to do so, directed verdict is proper. *See Wall v. Trogdon*, 249 N.C. 747, 107 S.E.2d 757 (1959). "To hold that evidence that a defendant *could*

*have been* negligent is sufficient to go to a jury, in the absence of evidence, direct or circumstantial, that such a defendant *actually was* negligent is to allow the jury to indulge in speculation and guesswork." *Jenkins v. Starrett Corp.*, 13 N.C. App. 437, 444, 186 S.E.2d 198, 203 (1972) (emphasis original) (citations omitted). The majority's holding permits the jury to engage in just the sort of "speculation and guesswork" which has been disapproved by long-established precedent.

The majority relies upon evidence that Mrs. Swann had fallen on two previous occasions during the preceding year, that the family had asked that she be restrained, and that her physician had authorized her restraint "as needed" as "a sufficient basis upon which the jury could have found that the defendants were negligent in not having Mrs. Swann restrained at the time of her fall." Following the majority's logic, defendants would have been negligent if they had not restrained Mrs. Swann at all times, which would have been contrary to her physician's orders and to his wishes as expressed during his testimony.

In my view, the evidence, even considered in the light most favorable to plaintiff, contained no showing whatsoever that on the date of Mrs. Swann's injury, defendants had reason to know that she required restraint for her own safety and, with such knowledge, failed to restrain her. In any event, the evidence tended to show that Mrs. Swann's restraint was found approximately two feet from her, giving rise to a strong inference that she had, in fact, been restrained prior to her fall and had managed to free herself, a frequent problem with the elderly according to the testimony of Mrs. Swann's physician.

In summary, plaintiffs presented essentially no evidence other than the fact that Mrs. Swann fell and was injured while in defendants' care. Defendants' negligence may not be inferred from that showing. Therefore, I vote to affirm the trial court's entry of a directed verdict in favor of defendants as to all claims.