* * * * * * * * * * *
The Full Commission reviewed the prior Decision and Order, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission hereby reverses the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is incarcerated in the North Carolina Department of Correction and was convicted of being a Habitual Felon. Plaintiff was sentenced to a term of 10 years and 11 months, which he began serving on March 4, 1998, as shown by the North Carolina Department of Correction Public Access Information System and through plaintiff's own testimony at the hearing before the Deputy Commissioner.
2. During 1998, including the day of August 5, 1998, plaintiff was housed at Central Prison. On August 5, 1998, plaintiff was housed in Unit Five, the "WRB," which is the workers residence building. Inmates in this unit may have work assignments. This is a general population cellblock where the inmates have greater freedom to come and go within the prison. The individual cells open up to the day room of the block. The dayroom doors to the rest of the prison are generally open from breakfast time until 7:15 or 7:30 p.m., and the inmates housed in WRB can go freely in and out of the cellblock, to go to meals or their jobs.
3. The WRB cellblock has 32 cells in it, and there is another block on the floor, also with 32 cells, for a total of 64 cells on the floor. On August 5, 1998, there were two inmates housed in each cell. J.E. Strickland was the Unit Five Assistant Manager, and J.L. Pratt was the Unit Five Manager. On the date of the assault that is the subject of this claim, Correctional Officer Penny and Correctional Officer Ruffin were assigned to the WRB cellblock area.
4. On the morning of August 5, 1998, plaintiff skipped breakfast and stayed in his cell. His roommate left the cell, but did not close the door securely behind him. This is a general practice by the inmates, allowing them to come and go into the dayroom from their individual cells, and was not prohibited.
5. Inmate Roy Allen was serving concurrent sentences with a maximum term of 40 years for a Sexual Offense in the First Degree, Kidnapping in the First Degree, and Common Law Robbery as well as other offenses and was convicted on December 12, 1985. Inmate Allen was incarcerated at Central Prison, but was not assigned to the WRB cellblock or that floor and he was not authorized to be in that area.
6. At the hearing before the Deputy Commissioner, plaintiff testified that he was sleeping in his cell on the morning of August 5, 1998, when Inmate Roy Allen entered the WRB cellblock. Inmate Allen entered plaintiff's cell, waking him, and began stroking plaintiff's chest. Inmate Allen then demanded that plaintiff get out of bed and perform an oral sexual act on Inmate Allen, threatening to kill plaintiff if he refused. Inmate Allen had one hand tucked in his pocket, as if he were hiding a weapon, and told plaintiff he would stab him if he did not comply with the demand. Plaintiff pleaded with Inmate Allen to stop, but Inmate Allen persisted. Plaintiff got out of bed and tried to step around Inmate Allen to get out of the cell, but Inmate Allen would not let him pass. Plaintiff testified that he was in genuine fear for his life and complied with his assaulter's demand to perform oral sex.
7. Following the sexual assault, plaintiff was very upset. Plaintiff testified that he walked around in the cellblock thinking about it, apparently not sure what to do next. Later that afternoon he spoke with Prison Chaplain Bryan Chestnutt, and related what had happened. Chaplain Chestnutt provided counseling and then took plaintiff to report the assault to the Assistant Unit Manager, J.E. Strickland.
8. After the assault was reported, the correctional staff followed the normal procedure of investigating and completing an Incident Report, along with witness statements, which were all received as evidence. The defendant's investigation, conducted by Sergeant E.C. Kimble, revealed that it did not deny that plaintiff was in fact the victim of a sexual assault by another inmate. In a memorandum dated August 12, 1998, from Sergeant Kimble to Mr. J.L. Pratt, the Unit Five Manager, Sergeant Kimble reported:
 In conclusion, I found that inmate Roy Allen entered an unauthorized location, verbally threatened, then sexually assaulted inmate Melvin Houston by forcing him to have oral sex with him through intimidation. Inmate Allen is an extreme threat and danger to the inmate population. Due to the heinous nature of this sexual assault coupled with inmate Allen's past history of sexual misconduct and violence, I recommend he be placed on Maximum Control.
9. Although Sergeant Kimble's memorandum does make reference to a past history of sexual misconduct and violence, it does not state whether this past history refers to Inmate Allen's criminal conviction or to events that occurred after his incarceration. Sergeant Kimble did not testify at the hearing before the Deputy Commissioner and there was no evidence presented to clarify Sergeant Kimble's written statement. The Full Commission finds that Sergeant Kimble's statement is ambiguous as to whether Inmate Allen's history of sexual misconduct and violence occurred prior to or after his incarceration and accordingly, gives it little weight on this issue. Therefore, the Full Commission is unable to find that defendant knew or should have known of the assailant's aggressive tendencies against other prisoners, thereby necessitating more restrictive confinement of the assailant.
10. At the hearing before the Deputy Commissioner, Lieutenant Scott Brown, who had worked at Central Prison for ten years, testified. He explained that when defendant has knowledge of an inmate's dangerous propensities, such as the fact that he may be a sexual predator, more restrictive housing is warranted and will be put in place. An inmate who has been identified as a sexual predator will be housed on "maximum control" and not left free to roam into other cellblocks of the general population of inmates. With regard to Inmate Allen, Lieutenant Brown testified, "If he had been identified as a sexual predator or had had multiple assaults, these sort of things, then, yes, he [Inmate Allen] would have been housed in maximum control and not left his block." Further, Lieutenant Brown testified that the staff at Central Prison would not have had any indication that Inmate Allen had been labeled as any kind of sexual predator and would not have had any reason to stop Inmate Allen if they had seen him on plaintiff's floor. The Full Commission finds that there was no competent evidence presented that Inmate Allen should have been housed on "maximum control" prior to this assault.
11. According to Lieutenant Brown's testimony, inmates are not housed in maximum control based on crimes committed prior to their incarceration, only for incidents that happen in prison. Due to the number of inmates, Lieutenant Brown testified that it would be impossible for correctional officer to know every inmate on every floor and they were not required to know each inmate assigned to each floor.
10. At the hearing before the Deputy Commissioner, there was no evidence presented, other than plaintiff's testimony, that Inmate Roy Allen had a history of violent assaults and sexual misconduct since being incarcerated. Lieutenant Brown testified that he had no personal knowledge of any alleged reputation or history of assaults by Inmate Allen during the ten years he had been employed at Central Prison. The only evidence presented of Inmate Allen's past history of sexual misconduct and assault was Inmate Allen's conviction record of a sexual offense. As Lieutenant Brown testified, had Inmate Allen been identified in prison as a sexual predator or had multiple assaults, defendant would have housed him in maximum control. Once defendant was aware of the assault on plaintiff, it was recommended that Inmate Allen be placed in maximum control and Lieutenant Brown testified that he was "pretty confident" that this was done based on the recommendation and the case. As shown by the North Carolina Department of Correction Public Access Information System, Inmate Allen was in "administrative segregation."
11. The Full Commission finds that there was no competent evidence presented that defendant knew or should have known that Inmate Allen was a threat to other inmates.
12. The Full Commission finds that plaintiff presented no evidence to support the conclusion that the correctional staff was negligent in not properly housing Inmate Allen.
13. The Full Commission finds that there was not any competent evidence to show that due to the negligence of an employee of defendant, Inmate Allen was allowed to enter plaintiff's floor and cell and, as a result, sexually assaulted plaintiff.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the undersigned enters the following
 CONCLUSIONS OF LAW
1. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties.Bolkir v. N.C. State University, 321 N.C. 706, 365 S.E.2d 898,900 (1988).
2. "It is well established that in order to prevail in a negligence action, plaintiffs must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause and damages." Camalier v. Jeffries, 340 N.C. 699, 706,460 S.E.2d 133, 136 (1995).
3. A plaintiff asserting a negligence claim against the State has the burden to prove that defendant breached a duty of care owed to plaintiff and that the breach was the proximate cause of plaintiff's alleged injury. The evidence must be sufficient to raise more than speculation, guess, or mere possibility. Swannv. Len-Care Rest Home, 127 N.C. App. 471, 475, 490 S.E.2d 572,575 (1997), rev'd on other grounds, 348 N.C. 68, 497 S.E.2d 282
(1998); See also N.C. Gen. Stat. §§ 143-291; 143-297.
4. A prison official is liable when he knows of, or in the exercise of reasonable care should anticipate, danger to a prisoner, and with such knowledge or anticipation fails to take the proper precautions to safeguard his prisoners. Taylor v.N.C. Dept. of Correction, 88 N.C. App. 446, 363 S.E.2d 868
(1988).
5. It is established law that the North Carolina Department of Correction is "not an insurer of the safety of every inmate and will not be found liable for negligence every time one inmate assaults another." Id. At 452, 363 S.E.2d at 871.
6. Plaintiff has failed to prove by the greater weight of the evidence that the actions of defendant's employees or agents were the proximate cause of his sexual assault. Plaintiff has not proven by the greater weight of the evidence that any employee or agent of the Department of Correction was negligent and his claim must be denied pursuant to N.C. Gen. Stat. § 143-291 et seq.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is hereby denied.
2. No costs are assessed.
This the __ day of August 2006.
 S/___________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER