***********
The undersigned reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has shown good grounds to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission rejects the Decision and Order of Deputy Commissioner Griffin and enters the following Decision and Order.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the court, and the court has jurisdiction of the parties.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff Luchina Everett is an individual presently residing in Pennsylvania but at the time of the subject occurrence, she was a citizen and resident of the State of North Carolina. At the time of the subject occurrence, the minor Ananasha Everett, deceased, was a citizen and resident of the State of North Carolina.
4. Collin Wethington, Robert Vause, Jeff Huffman and Robin Harris were employees and agents of defendant.
5. Pursuant to N.C. Gen. Stat. § 143B-346, the general purpose of the North Carolina Department of Transportation is to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of people and goods as provided for by law.
6. Piney Green Road in the city of Jacksonville in Onslow County, North Carolina, is a state highway.
7. Luchina Everett's daughter, Ananasha Everett, age 10, died as a result of injuries sustained in a March 17, 2003 accident on Piney Green Road, which is the subject of this claim.
8. Plaintiffs contend the issues to be tried by the Court are as follows:
 a. Whether plaintiff, Luchina Everett, was injured as a result of the negligence of the defendant?
 b. Whether the wrongful death of Ananasha Everett was caused by the negligence of the defendant? *Page 3 
 c. What amount of damages is plaintiff, Luchina Everett, entitled to recover from defendant?
 d. What amount of damages is plaintiff, John Everett, Jr. as Administrator of the Estate of Ananasha Everett entitled to recover from defendant?
9. Defendant contends that the contested issues to be tried by the Court as follows:
 a. Is the claim of the Administrator of the Estate of Ananasha Everett barred by a general release?
 b. Are the claims barred by the public duty doctrine or the immunity of public officers?
 c. Was a named employee of defendant negligent?
 d. Was such negligence a proximate cause of injury to plaintiff Luchina Everett or the death of Ananasha Everett?
 e. Is plaintiff Luchina Everett's claim barred by her contributory negligence?
 f. What amount of damages, if any, is plaintiff Luchina Everett entitled to recover from defendant under the terms of the Tort Claims Act.
 g. What amount of damages, if any, is the Estate of Ananasha Everett entitled to recover from defendant under the terms of the Tort Claims Act.
10. Plaintiffs' Exhibits:
 • Exhibit 1: Ananasha Everett's Death Certificate;
 • Exhibit 2: Ananasha Everett's Funeral Expenses;
 • Exhibit 3: Accident Report;
 • Exhibit 4: State Trooper's File;
 • Exhibit 4a: North Carolina Hwy Patrol Statement of George Edwards; *Page 4 
 • Exhibit 5: Luchina Everett's Medical Records;
 • Exhibit 6: Luchina Everett's Medical Records/Expenses Summary Chart;
 • Exhibit 7: Luchina Everett's Medical Bills;
 • Exhibit 8: Not submitted;
 • Exhibit 9: Affidavit of Robin Harris;
 • Exhibit 10: Not submitted;
 • Exhibit 11: Job Reports;
 • Exhibit 12: Job Reports — summary;
 • Exhibit 13: CARS Reports;
 • Exhibit 14: CARS Reports — summary;
 • Exhibit 15: Article on Piney Green Road;
 • Exhibit 16: Robert Kimbrough's Letter to the Editor;
 • Exhibit 17: Luchina Everett's Wage Verification;
 • Exhibit 18: Not submitted;
 • Exhibit 19: Ananasha Everett's School Records;
 • Exhibit 20: Not submitted;
 • Exhibit 21: Trooper's Photographs of Accident: 21A, 21AX, 21B, 21C, 21D, 21G, 21J, 21L;
 • Exhibit 22: Jeff Huffman Photographs — 22A, 22B, 22B1, 22BX, 22C, 22D;
 • Exhibit 23: Not submitted;
 • Exhibit 24: Family Photographs — 24A, 24B, 24C, 24D, 24E, 24F (multiple photographs); *Page 5 
 • Exhibit 25: Not submitted;
 • Exhibit 26: Not submitted;
 • Exhibit 27: Strip Analysis Report
 • Exhibit 27a: Focused Strip Analysis Report
 • Exhibit 28: Maintenance Condition Assessment Report — December 2002;
 a. Page 16
 b. Page 20
 • Exhibit 29: Maintenance Condition Survey Manual — August 1998;
 • Exhibit 30: Not submitted;
 • Exhibit 31: Maintenance Operations Manual;
 a. Not submitted
 b. Section GP-1
 c. Not submitted
 d. Section MN-43
 • Exhibit 32: Not submitted;
 • Exhibit 33: Not submitted;
 • Exhibit 34: Request for Spot Safety Funds;
 • Exhibit 35: Not submitted;
 • Exhibit 36: "Fatal Slip" for Everett Accident;
 • Exhibit 37: 1999 Shoulder Ditch Maintenance Procedure Training Manual;
 a. Page 8
 b. Page 9 *Page 6 
 • Exhibit 38: 1997 Field Maintenance Training Manual;
 • Exhibit 39: Sept 1988 Maintenance Management Manual;
 a. Section MN-40 Maintenance of Unpaved Shoulders
 b. Section MN-21 Maintenance Function 441
 c. Conditions Which Warrant the Scheduling of Unpaved Shoulder Maintenance
 d. General Scheduling Considerations
 e. Not submitted
 f. Supervisor's Check List
 g. Unpaved Shoulder Maintenance
 • Exhibit 40: Deposition Transcript of Jeff Huffman;
 • Exhibit 41: Deposition Transcript of Robert Vause;
 • Exhibit 42: Deposition Transcript of Collin Wethington;
 • Exhibit 43: Not submitted;
 • Exhibit 44: Not submitted;
 • Exhibit 45: Not submitted;
 • Exhibit 46: Not submitted;
 • Exhibit 47: Safety Impacts of Pavement Edge Drop-offs;
 a. Typical Scrubbing Accident Diagram
 • Exhibit 48: Not submitted;
 • Exhibit 49: Not submitted;
 • Exhibit 50: Not submitted;
 • Exhibit 51: Work Related Project Crash Reduction Information; *Page 7 
 • Exhibit 52: Not submitted;
 • Exhibit 53: Not submitted;
 • Exhibit 54: Not submitted;
 • Exhibit 55: Ananasha Everett's Medical Records;
 • Exhibits 56-99: Not submitted
 • Exhibit 100: Ernest Mallard Deposition Exhibit Packet;
 • Exhibit 101: Exemplar Curb;
 • Exhibit 102: Exemplar Tire;
 • Exhibit 103: PC-Rectify Blow-up;
 • Exhibit 104: PC-Rectify Blow-up;
 • Exhibit 105: PC-Rectify Blow-up; and
 • Exhibit 106: Optical Illusion Exemplar.
 • Exhibits 107 and 108: Deposition Transcript and Video(s) of George Edwards;
 • Exhibits 109, 110A, and 110B: Deposition Transcript and Video(s) of Robin Harris;
 • Exhibits 111 112: Deposition Transcript and Video(s) of Delbert Glover;
 • Exhibit 113: Not submitted; and
 • Exhibit 114: Deposition Transcript and Video(s) of Robert Kimbrough. Defendant's Exhibits:
 • Exhibit 1: Trooper Photographs;
 • Exhibit 2: Trooper Photographs; *Page 8 
 • Exhibit 3: Transportation Worker Skill-Based Pay;
 • Exhibit 4: Sutton Curriculum Vitae;
 • Exhibit 5: Capps Curriculum Vitae;
 • Exhibit 6: N.C. Form DMV349 Codes;
 • Exhibit 7: Plaintiffs' Supplemental Responses to Defendant's First Set of Discovery;
 • Exhibit 8: Luchina Everett Deposition; and
 • Exhibit 9: Map drawn by Robert Kimbrough.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the morning of March 17, 2003, plaintiff Luchina Everett was traveling on Piney Green Road in Jacksonville, North Carolina with her ten-year old daughter, Ananasha Everett, in the vehicle with her. Luchina Everett and her daughter were in route to Hunters Creek Elementary School where she worked and where her daughter attended school. Ms. Everett was to arrive by 8:00 a.m. and students were to arrive by 8:30 a.m. Ms. Everett was relaxing and listening to music while traveling to her destination.
2. While traveling south on Piney Green Road, as plaintiff Luchina Everett swerved away from on oncoming vehicle and overcorrected her steering, she lost control of her vehicle as it began to slide out of control and her right tires left the roadway. Ms. Everett felt as if her vehicle was sliding on ice. When her vehicle came back on to the highway, it traveled into the path of oncoming traffic. *Page 9 
3. George Edwards was traveling several car lengths behind plaintiffs at the time of her accident when he also noticed an oncoming car that appeared to be coming into his lane of travel and maneuvered his vehicle to the right to avoid a collision. Mr. Edwards' vehicle did not leave the roadway, and he did not lose control of his vehicle. Mr. Edwards witnessed the right rear wheel of plaintiffs' vehicle spinning as if Ms. Everett was accelerating when the vehicle left the pavement. Mr. Edwards was not able to see the front wheels of plaintiffs' vehicle. Mr. Edwards described plaintiffs' vehicle's reentering of the roadway as a slingshot effect.
4. Plaintiffs allege that in plaintiffs' path of travel back onto the highway, they encountered a five-inch shoulder drop off near her point of reentering the highway, which they claim caused Mrs. Everett to lose control of her vehicle. Plaintiffs have alleged negligence, on behalf of the North Carolina Department of Transportation, by Robert Vause, Colin Wethington, and Jeffrey Huffman, all employees of defendant, in that the named employees failed to repair the shoulder drop off. Mr. Robin Harris who was employed by defendant from 2003 through 2005, testified on behalf of plaintiffs that he had personally reported to his supervisors, Mr. Huffman, Mr. Wethington, and Mr. Vause, prior to March 17, 2003 on several occasions that there was a dangerous shoulder drop off on Piney Green Road near the location of plaintiffs' accident that needed to be repaired. At the time of the accident, Mr. Harris had been employed by defendant for approximately one and a half months. Mr. Harris knew the plaintiffs' family prior to the accident and had attended church with them for approximately ten years.
5. Mr. Huffman, a Transportation Worker III, was in charge of four maintenance crews and one crew that prepared dirt roads for paving. Maintenance employees were responsible for maintaining 550 miles of secondary roadway and 100 miles of primary roadway. Their duties included general maintenance including the removal of roadway obstructions, *Page 10 
repairing potholes, patching roads, shoulder repairs, picking up liter, debris removal, mowing behind ditches, installing and maintaining driveways and drainage pipes, and small construction projects. Mr. Huffman did not remember any complaints by Mr. Harris or other crew members of a pavement edge drop off at the site before plaintiffs' accident. Mr. Harris had no prior notice of a pavement edge drop off at the site of the accident.
6. Colin Wethington, the county maintenance engineer for Onslow County, has been employed with defendant for twenty-one years. Mr. Wethington did not remember being notified by Mr. Harris of dangerous shoulder drop off on Piney Green Road. There is insufficient evidence that Mr. Wethington had prior notice of a shoulder drop off at the location of plaintiffs' accident.
7. Mr. Vause is the District Engineer for Onslow and Pender Counties for defendant. Mr. Vause has been employed by defendant for seventeen years in maintenance related jobs with defendant. Mr. Vause's duties include overseeing the maintenance programs, resurfacing programs, signing all driveway permits, and reviewing encroachment, house moving, and outdoor advertising permit requests. In Mr. Vause's experience, reports of low shoulders or ruts get immediate attention. He did not remember any complaints about rutting or low shoulders on Piney Green Road. Mr. Vause had no prior notice of a pavement edge drop off in the area of plaintiffs' accident.
8. Defendant's job report forms completed by the crew supervisors for the three and a half months prior to plaintiffs' accident show pavement patching, trash pickups of Adopt a Highway trash bags, surveys, and mapping on Piney Green Road. There is no indication on the report forms that defendant had notice of or repaired a pavement edge drop off at the scene of plaintiffs' accident. Defendant's Citizens Action Request System documents complaints and *Page 11 
inspections of completed work. For the four month period prior to plaintiffs' accident, there were numerous complaints throughout Onslow County, but none of the fifteen calls on Piney Green Road are related to or provide notice of a shoulder drop off at the location of plaintiffs' accident.
9. Scott Capps, P.E., the State's Road Maintenance Operations Engineer and an expert in the area of road maintenance operations and road maintenance, opined and the Full Commission finds as fact that defendant's maintenance employees did everything reasonable to maintain and inspect Piney Green Road and that the act of receiving and investigating reports and following up with repairs on pavement edge drop offs approaching three inches was standard procedure.
10. The greater weight of the competent evidence shows that neither defendant nor any of the named employees in this matter had notice of a pavement or shoulder drop off at the location of plaintiffs' accident and that the procedures followed by defendant's maintenance employees met the applicable requirements.
11. Ernest Mallard, an expert in forensic engineering and accident reconstruction, testified on behalf of plaintiffs that the shoulder drop off was the cause of plaintiffs' accident. Mr. Mallard has a degree in civil engineering and spent twenty-two years with the North Carolina Department of Transportation. He now performs engineering investigations and administrative work from Forensic Engineering Incorporated. Mr. Mallard has testified in court on matters of accident reconstruction only eight to ten times.
12. Mr. Mallard testified that as plaintiffs' vehicle was approaching an oncoming vehicle, Ms. Everett pulled to the right with her right tires leaving the road. When plaintiffs' vehicle came back onto the road, it crossed the center line and collided with another vehicle *Page 12 
traveling in the opposite direction. Mr. Mallard further testified that from what he heard from Mr. Edwards, that there must have been a slingshot effect when plaintiffs' got back on the road. He based his opinion, that the shoulder drop off was the cause of plaintiffs' accident, on the fact that a shoulder can cause a vehicle to have an accident either upon leaving the road or attempting to get back on it. He was not able to say for certain that there was evidence plaintiffs' vehicle's tires were scrubbing, only that it was probable. He was not able to determine if the tire tracks in a photograph of the scene of the accident were yaw marks, which would indicate that the car was sliding sideways and found that there was no significance in the fact that the tire marks were curved.
13. Michael Sutton, P.E., an expert in automobile accident reconstruction with a Master of Engineering and Bachelor of Science in Mechanical Engineering, testified that plaintiffs' accident was not related to a pavement edge drop off. Mr. Sutton has performed technical accident analysis for over twenty years, and has testified in more than 150 trials and 400 depositions. He is familiar with the literature concerning shoulder drop offs and has performed his own testing as well as participated in testing by others on this subject. He is knowledgeable of cases concerning shoulder drop offs and has investigated fifteen to twenty cases in which a shoulder drop off was the main issue.
14. In reviewing this case, Mr. Sutton reviewed witnesses' statements and performed PC crash work to see if plaintiffs' vehicle could physically go off and on the road in the context of where individuals testified that the pavement drop off was. Mr. Sutton opined that plaintiffs' vehicle's tire marks clearly show that plaintiffs' car was already beginning to yaw (slide sideways) as it left the pavement. The fact that plaintiffs' tire marks were curved meant that her vehicle was rotating leaving tire marks from the sides of the tread without any tread pattern. *Page 13 
Plaintiffs' yaw marks are evidence that Ms. Everett was aggressively steering and had engaged in avoidance steering away from an oncoming vehicle. According to Mr. Sutton, when a vehicle is under control when it leaves the roadway, it is brought gradually to the pavement edge. However, once the tires mount the pavement edge, then the driver of the vehicle loses control and leaves tire marks on the pavement. The tire marks from a vehicle that loses control by the pavement edge will originate from the edge of the pavement at the point in which the tires enter the roadway and are not found on the shoulder. Therefore, in a case where a vehicle loses control at the point of reentering the roadway, the tire marks would be significantly different than the tire marks evidenced in this case.
15. Whether a shoulder drop off caused Ms. Everett to lose control of her vehicle depends on whether there was scrubbing of her tires with the pavement. The evidence in this case does not show that plaintiffs' tires were scrubbing against the pavement. Moreover, the evidence shows that Ms. Everett lost control of her vehicle before she left the pavement when her vehicle tires began yawing (sliding sideways). If the shoulder drop off had caused plaintiffs to lose control of their vehicle, plaintiffs' tire marks would originate from the edge of the pavement, not on the shoulder as they do.
16. As the testimony of Mr. Mallard was speculative, the Full Commission gives greater weight to the testimony of Mr. Sutton.
17. The Full Commission finds that the greater weight of the evidence shows that shoulder drop off was not the proximate cause of plaintiffs' March 17, 2003 vehicular accident.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 14 
1. The North Carolina Tort Claims Act permits individuals to sue State departments or agencies for injuries caused by the negligence of State employees. A plaintiff must show that the injuries sustained were the proximate result of a negligent act of a named state employee acting within the course and scope of his employment. See N.C. Gen. Stat. § 143-291.
2. The N.C. Dept. of Transportation is subject to a suit to recover damages for death caused by its negligence only as is provided in the Tort Claims Act. Drewery v. N.C. Dept. of Transp., 168 N.C. App. 332,607 S.E.2d 342 (2005), disc. rev. denied by Drewry v. State Dept. ofTransp., 359 N.C. 410, 612 S.E.2d 318 (2005). Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties. Bolkhir v. N.C. State Univ., 321 NC 706,709, 365 SE2d 898, 900 (1988).
3. In order to recover on a civil claim for negligence, a claimant must prove: (1) the existence of a duty to her; (2) a breach of that duty by the defendant (the named employees thereof in a tort claim); (3) injury sustained; and (4) that the injury sustained was a proximate result of the breach of duty. Pulley v. Rex Hosp. 326 NC 701,392 SE2d 380 (1990). Plaintiffs have the burden of proof on all these elements and must prove her case by a preponderance of the evidence. Id. The evidence must be sufficient to raise more than speculation, guess, or mere possibility. Swann v. Len-Care Rest Home, 127 N.C. App. 471, 475,490 S.E.2d 572, 575 (1997), rev'd on other grounds, 348 N.C. 68,497 S.E.2d 282 (1998); See also N.C. Gen. Stat. §§ 143-291; 143-297.
4. The N.C. Department of Transportation can be found liable for negligence under N.C. Gen. Stat. § 143B-346 which states that
 The general purpose of the Department of Transportation is to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of people and goods as *Page 15 
provided for by law. The Department shall also provide and maintain an accurate register of transportation vehicles as provided by statutes, and the Department shall enforce the laws of this State relating to transportation safety assigned to the Department. The Department of Transportation shall be responsible for all of the transportation functions of the executive branch of the State as provided by law except those functions delegated to the Utilities Commission, the State Ports Authority, and the Commissioners of Navigation and Pilotage as provided for by Chapter 76. The major transportation functions include aeronautics, highways, mass transportation, motor vehicles, and transportation safety as provided for by State law. The Department of Transportation shall succeed to all functions vested in the Board of Transportation and the Department of Motor Vehicles on July 1, 1977.
See Norman v. N.C. Dep't of Transp., 161 N.C.App. 211, 588 S.E.2d 42
(2003) (noting that the NCDOT may have a duty to install a stop sign if the evidence establishes that NCDOT knew or should have known that an intersection was hazardous, the breach of which duty gives rise to a cause of action under the Torts Claim Act); Smith v. N.C. Dep't ofTransp., 156 N.C.App. at 101, 576 S.E.2d at 351-52 (affirming the Commission's finding that the DOT negligently failed to maintain a railroad crossing, in dereliction of its statutory duty to do so);Phillips v. N.C. Dept. of Transportation, 80 N.C.App. 135, 138,341 S.E.2d 339, 341 (1986) (stating that the NCDOT's "duty to maintain the right-of-way necessarily carried with it the duty to make periodic inspections" and concluding that the NCDOT could be found negligent based on implied notice of a hazardous condition on the right-of-way).
5. In addition, pursuant to N.C. Gen. Stat. § 136-44.1 defendant has a duty to develop and maintain a statewide system of roads and highways and to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of people and goods. See also N.C. Gen. Stat. § 136-18 (giving the NCDOT the power to assume full and exclusive responsibility for the *Page 16 
maintenance of all roads other than streets in towns and cities, forming a part of the State highway system).
6. Although defendant had a duty to plaintiffs to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of plaintiffs, plaintiffs failed to prove by the greater weight of the evidence that defendant breached a duty of care to plaintiffs or that plaintiffs' injuries were proximately caused by a breach of duty. Therefore, plaintiffs have failed to prove negligence.Pulley, 326 NC 701, 392 SE2d 380 (1990).
7. In addition, in order to prove negligence, plaintiffs must show that defendant had actual notice of the condition that allegedly caused the injury. Willis v. City of New Bern, 137 N.C. App. 762,529 S.E.2d 691 (2000). The greater weight of the evidence shows that defendant did not have notice of the road condition that plaintiffs allege caused their accident. Id.
8. As plaintiffs have failed to prove negligence, the Full Commission does not reach the issues of the applicability of public duty doctrine, damages, contributory negligence, or whether plaintiffs are barred by a general release as raised by defendant.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiffs' claims for benefits under the North Carolina Tort Claims Act are hereby DENIED.
2. Each side shall pay its own costs.
This the 16th day of April, 2009. *Page 17 
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
S/___________________ DIANNE C. SELLERS COMMISSIONER
S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1