The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn, and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Glenn.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. All the parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All parties are bound by and subject to the North Carolina Tort Claims Act. All parties have *Page 2 
been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. Damien S. Hawkins was born on October 29, 1990, and Karia Hawkins is his mother.
3. The accident giving rise to this claim occurred at approximately 7:15 p.m. on December 29, 2004, at Thelma Boat Landing near SR 1422 in Halifax County, North Carolina.
4. At the time of the accident Clinton Harmon was the driver of a vehicle in which Jermaine Whitaker and Damien Hawkins were passengers.
5. At the time of the accident, Mr. Harmon, Mr. Whitaker and Mr. Hawkins were on their way to a basketball tournament at Northampton-West High School.
6. After failing to make an intended turn onto Highway 46, Mr. Harmon eventually turned onto SR 1422, traveling in the direction of the Roanoke Rapids Lake.
7. Mr. Harmon's vehicle plunged into Roanoke Rapids Lake with all three individuals still inside.
8. Mr. Harmon and Mr. Hawkins died as a result of the vehicle running into Roanoke Rapids Lake on December 29, 2004. Mr. Whitaker was the sole survivor of the accident.
9. Highway Patrol Officer W. R. Bullock III investigated this accident.
10. The issues to be determined from this hearing are as follows:
 a. Whether Plaintiff was injured by the negligence of an employee of Defendant?
 b. If so, whether said negligence was a proximate cause of the damages Plaintiff sustained? *Page 3 
 c. What, if any, damages is Plaintiff entitled to recover from Defendant?
11. The exhibits that were made a part of the evidence in this matter are as follows:
 a. Plaintiff's #1, report of Randy Down;
 b. Plaintiff's #2, 1/2/05 video by Teddy Joyner;
 c. Plaintiff's #6, HP 320;
 d. Plaintiff's #7, DMV 349;
 e. Plaintiff's #8, BriteSmilz letter to Clinton Harmon about job;
 f. Plaintiff's #9, Clinton Harmon's 2004 W-2;
 g. Plaintiff's #10, Clinton Harmon's funeral bill;
 h. Plaintiff's #11, Clinton Harmon's funeral program;
 i. Plaintiff's #12, Damien Hawkins' funeral bill;
 j. Plaintiff's #13, Damien Hawkins' funeral program;
 k. Defendant's #1, photo from Google of SR-1422 near lake;
 l. Defendant's #2, photo of SR-1422 where pavement ended;
 m. Defendant's #3, photo by Trooper Bullock;
 n. Defendant's #4, photo of end of pavement showing skid marks;
 o. Defendant's #5, photo of entrance into private vehicle area;
 p. Defendant's #6, photo of entrance of road with boat access sign;
 q. Defendant's #7, photo of warning sign of pedestrian crossing;
 r. Defendant's #8, photo of tire marks of subject vehicle before hitting water;
 s. Defendant's #9, photo of large rocks at edge of parking area;
 t. Defendant's #10, photo of rocks struck by Harmon vehicle;
 u. Defendant's #11, statement of Jermaine Whitaker; *Page 4 
 v. Defendant's #12, letter from County Commissioner dated 9/1/61;
 w. Defendant's #13, MUTCD manual;
 x. Defendant's #14, crash analysis; and,
 y. Defendant's #15, release with Clinton Harmon's automobile carrier.
 * * * * * * * * * * *
The Pre-Trial Agreement along with its attachments and any additional stipulations are hereby incorporated by reference as though they were fully set out herein.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. The accident giving rise to this claim occurred at approximately 7:15 p.m. on the evening of December 29, 2004, in Halifax County, North Carolina.
2. Clinton Harmon and Jermaine Whitaker and Damien S. Hawkins planned to attend a high school basketball tournament that was being played at Northampton-West High School. Mr. Harmon and Mr. Whitaker planned on meeting and picking up Mr. Hawkins as they were on their way to the basketball game.
3. Mr. Harmon and Mr. Whitaker picked up Jermaine Whitaker, at approximately 6:30 p.m. Mr. Harmon was driving his personal vehicle with Mr. Whitaker in the front right passenger seat and Mr. Hawkins seated in the rear. They were attempting to arrive at the school in time to see a game that was to begin at 7:00 or 7:30 p.m.
4. As Mr. Harmon was driving down the road, he took a call on his cell phone. While he was talking, Mr. Harmon drove past the turn and Mr. Whitaker, who knew the correct *Page 5 
route, urged him to turn around. Mr. Harmon told Mr. Whitaker that they could turn on the next street and get back to the road where they wanted to be. As soon as Mr. Harmon turned, Mr. Whitaker told him that it was not the right way. They continued to drive for about ten minutes and saw a sign that said "Thelma." Mr. Whitaker told Mr. Harmon that they were headed the wrong way and that they should turn around. Mr. Harmon turned around and they drove for another five minutes when Mr. Harmon veered to the left onto SR 1422, Van Warren Road, hoping that it would lead them back out to the highway so they could get to the high school.
5. Mr. Harmon continued down SR 1422 past the point where the roadway striping ended until they reached the entrance to Thelma Boat Landing.
6. A "Wildlife Boating Access Area" sign was posted at the intersection of SR 1400 and SR 1422 where Mr. Harmon turned onto SR 1422. At the entrance to the boat landing, there was a second Wildlife Boating Access Area sign posted, as well as a large white sign welcoming visitors to the boat landing and providing information about the dam and facilities. A light was erected on one end of the boat landing parking lot.
7. SR 1422 has double yellow lines down the center of the roadway dividing the two lanes of travel. There are white lines on each edge of the roadway indicating the edge of the roadway. The roadway striping ended before the entrance to the Thelma Boat Landing parking lot. SR 1422 did not end in the lake, but rather ended at the entrance to the boat landing, which was marked with signs establishing it as such.
8. The speed limit on this section of SR 1422 is 55 mph even though there are no signs posted indicating the same because it is a rural road outside of any city limit. The 55 mph speed limit does not apply to the boat landing parking lot, a public vehicular area not operated by the Department of Transportation, but rather the Wildlife Resources Commission of the *Page 6 
Department of Environment and Natural Resources. Pursuant to N.C. Gen. Stat. § 143-116.8, the applicable speed limit is 25 mph in all State park and forest road systems.
9. When Mr. Harmon turned onto SR 1422, he was lost and attempting to get back onto the main highway. Mr. Harmon continued driving down the descending road and did not see the signs that were posted regarding a pedestrian crossing or the signs that he was entering the Thelma Boat Landing. When the road surface changed to gravel as he entered the parking lot of the boat landing, Mr. Harmon applied his brakes in an effort to stop. Before Mr. Harmon could stop his vehicle, he hit large rocks placed at the edge of the lake which caused the vehicle to become air borne and land in the water.
10. After the vehicle landed in the water, all three occupants got out of the vehicle and Mr. Harmon and Mr. Hawkins were carried away by the current. Mr. Hawkins body was found several days later and Mr. Harmon's body was not found until August 2005.
11. Trooper William R. Bullock of the North Carolina Highway Patrol investigated this accident. Trooper Bullock based his investigation report on observations at the scene and the fact that fatalities had occurred. Trooper Bullock could not determine the speed that Mr. Harmon was traveling and therefore, did not find the he was exceeding the speed limit. In the DMV-349, the accident investigation report, Trooper Bullock determined that driver inattention was the only contributing factor in the accident and did not find any contributing roadway factors. Trooper Bullock opined that Mr. Harmon's actions, particularly considering his unfamiliarity with the road, contributed to the accident.
12. Following his investigation of this accident, Trooper Bullock forwarded a report to Defendant indicating that warning signs needed to be placed on SR 1422 indicating that the roadway ended. Trooper Bullock testified that the purpose of the report, which is routinely done *Page 7 
after accidents involving state property, was to request that Defendant have their engineers look into whether signs should be placed along the road. The forwarding of this report by Trooper Bullock was the triggering factor for Defendant to do an engineering study to determine whether additional safety improvements were needed including warning signs being placed on SR 1422.
13. The Department of Transportation is required to follow the Manual on Uniform Traffic Control Devices (MUTCD) and additional policies and procedures in determining where road signage should be placed as required by N.C. Gen. Stat. § 136-30(a). Pursuant to the MUTCD, warning signs are to be out in place only after engineering studies have been conducted. The MUTCD states that warning signs should not be overused, because overuse can cause drivers to disregard them.
14. While the MUTCD and State law do not mandate when and engineering study should be conducted, the Department of Transportation follows its policy and procedure and conducts engineering studies as a result of specific triggering events. These triggering events include accident investigations where the facts indicate that road designs, signs, or other factors controlled by DOT may be implicated, patterns of traffic accidents based on the severity as determined by the Highway Safety Improvement Program, individuals' requests including those of law enforcement and those studies initiated by Defendant when it has reason to believe a study is warranted.
15. There was a Nighttime Conditions Survey conducted by Defendant in late 2003 to make certain that the signs already posted on SR 1422 were visible and in good repair. The study was not conducted in order to determine whether additional safety improvements were needed along a particular route from an engineering perspective. *Page 8 
16. SR 1422 is a paved two-lane road in Halifax County, North Carolina that has been maintained by the North Carolina Department of Transportation since 1961. There have been two reported accidents since 1961. Up until the time that this accident occurred, no fatal accidents had been reported on this road. There were no roadway or signage related accidents that occurred on SR 1422 that would have triggered an engineering study by Defendant.
17. Before the filing of Trooper Bullock's report, there had never been any notice or report regarding unsafe conditions on SR 1422 to the Department of Transportation and there had never been a request that Defendant examine the roadway or its signs due to concerns about the proximity of the lake or any lack of signs indicating that the road was a dead end road.
18. Defendant's duty is dictated by N.C. Gen. Stat. § 136-30, which incorporates the Manual of Uniform Traffic Control Devices (MUTCD), along with additional policies and procedures that may be established and implemented by the Defendant.
19. There is no evidence to find that any warning sign should have been posted on SR 1422 at the time of the accident to show that the absence of any particular sign caused or contributed to the accident. The evidence presented established that no such warning signs were required on SR 1422. North Carolina Department of Transportation Division engineers Andy Brown and Lee Jernigan testified that while the MUTCD describes how "dead end" and "no outlet" signs should be placed if they are used, these signs are not required by the MUTCD or by the Defendant's policies. In addition, there is no requirement that Defendant post signs warning of lakes or other bodies of water near public highways.
20. Moreover, there is no evidence to establish that the proximity of the lake to the roadway amounted to a dangerous situation for the traveling public or that the condition required warning signs on SR 1422. *Page 9 
21. There is no evidence to show that there existed a condition that prompted any employee of Defendant or anyone else traveling on SR 1422 to a make a report to Defendant. Consequently, there is no evidence that Defendant had notice of any condition that would have prompted an engineering study, prior to the accident in this claim, in relation to the lake or placement of warning signs.
22. Plaintiff has also alleged that Defendant was negligent in failing to lower the speed limit on SR 1422. However, the speed limit is determined by N.C. Gen. Stat. § 20-141(a) and (b). While N.C. Gen. Stat. § 20-141(d) gives Defendant the power to declare a different speed limit, the change must be based on an engineering study and traffic investigation. As there had never been circumstances that would have triggered the Defendants to conduct such an engineering study, no study was conducted.
23. Based upon the greater weight of the evidence, the Full Commission finds that Plaintiff has failed to prove that Defendant breached any duty owed to Plaintiff.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Tort Claims Act permits individuals to sue State departments or agencies for injuries caused by the negligence of State employees. A Plaintiff must show that the injuries sustained were the proximate result of a negligent act of a named state employee acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291. *Page 10 
2. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties.Bolkhir v. N.C. State Univ.,321 NC 706, 709, 365 SE2d 898, 900 (1988).
3. In order to recover on a civil claim for negligence, a claimant must prove: (1) the existence of a duty to her; (2) a breach of that duty by the Defendant (the named employees thereof in a tort claim); (3) injury sustained; and (4) that the injury sustained was a proximate result of the breach of duty. Pulley v. Rex Hosp.326 NC 701, 392 SE2d 380 (1990). Plaintiff have the burden of proof on all these elements and must prove her case by a preponderance of the evidence. Id. The evidence must be sufficient to raise more than speculation, guess, or mere possibility. Swann v. Len-CareRest Home, 127 N.C. App. 471, 475, 490 S.E.2d 572, 575 (1997), rev'd on other grounds, 348 N.C. 68, 497 S.E.2d 282 (1998); Seealso N.C. Gen. Stat. §§ 143-291; 143-297.
4. Pursuant to the provisions of N.C. Gen. Stat. § 136-30(a) the General Assembly has set the standard of care with respect to all signage on state roads in that all traffic signs and traffic control devices placed on a highway in the State highway system must conform to the Manual on Uniform Traffic Control Devices (MUTCD). Plaintiff has failed to establish by the greater weight of the evidence that Defendant or its agent, Andy Hadley Brown, breached the duty of care imposed by N.C. Gen. Stat. § 136-30.
5. In addition, pursuant to N.C. Gen. Stat. § 136-44.1, Defendant has a duty to develop and maintain a statewide system of roads and highways and to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of people and goods. See also
N.C. Gen. Stat. § 136-18 (giving the NCDOT the power to assume full and exclusive responsibility for the *Page 11 
maintenance of all roads other than streets in towns and cities, forming a part of the State highway system). Plaintiff has failed to prove that Defendant breached this duty.
6. Pursuant to the provisions of N.C. Gen. Stat. § 143-116.8(a) and (b)(1), it is unlawful for a person to operate a vehicle in the State parks and forest road systems in excess of 25 mph. The Thelma Boat Landing is under the operation of the Wildlife Resources Commission of the Department and of Environment and Natural Resources, and is not in the right of way of the Department of Transportation. Defendant had no authority to set speed limits or erect signs at the Thelma Boat Landing.
7. Although Defendant had a duty to Plaintiff to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of Plaintiff, Plaintiff failed to prove by the greater weight of the evidence that Defendant breached a duty of care to Plaintiff or that Plaintiff's injuries were proximately caused by a breach of duty. Therefore, Plaintiff has failed to prove negligence. Pulley, 326 NC 701, 392 SE2d 380 (1990).
8. As Plaintiff has failed to prove negligence, the Full Commission does not reach the issues of the applicability of contributory negligence.
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits under the North Carolina Tort Claims Act is hereby DENIED.
2. Each side shall pay its own costs.
This the 25th day of July, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
 CONCURRING: S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1